[No. 6030.]

## BURCHER ET AL. v. THE PEOPLE.

1. **Constitutional Law—Statutes—Title—Sufficiency—Determination.**

Whether the subject-matter of a statute is clearly expressed in its title, in compliance with the mandatory provisions of § 21, art. 5, Colo. const., must be determined by the contents of the statute, without regard to the source of the power of which the act itself is an expression.—P. 499.

2. **Same—Regulation of Employment—Statutory Construction.**

The title of the so-called "Women and Children Act" (Sess. Laws 1903, c. 138), entitled "An act to prescribe and regulate the hours of employment for women and children in mills, factories, manufacturing establishments, shops, stores and any other occupation which may be deemed unhealthful or dangerous," is not broad enough to cover a section therein prohibiting the employment of women for more than eight hours a day in a mill, factory, manufacturing establishment, shop, or store; since the title relates to occupations injurious to health, and such section treats of occupations which may not be unhealthful.—P. 500.

3. **Constitutional Law—Legislative Power—Delegation of Power.**

Section 25a, art. 5, Colo. const., requires the general assembly to provide for an eight-hour day for persons employed in underground mines and other specially enumerated occupations, "or other branch of industry or labor that the general assembly may consider injurious or dangerous to health, life or limb." Held, that, under this provision, as well as under the police power, the general assembly itself must regulate the hours of labor, and cannot delegate such power to either of the other great co-ordinate departments of government.—P. 501.

4. **Constitutional Law — Master and Servant — Regulations — Hours of Service.**

Section 25a, art. 5, Colo. const., requires the general assembly to provide for an eight-hour day for persons employed in mines and other enumerated employments, "or other branch of industry or labor that the general assembly may consider injurious or dangerous to health, life or limb. Held, that, in attempting to regulate any of the unnamed branches of industry or labor, the general assembly must first declare that the same is injurious to health; and, that a mere general prohibition of employment in a harmless occupation beyond specified hours is not the equivalent of a declaration that such occupation is injurious.—P. 501.

5. **Constitutional Law—Individual Rights—Right to Contract for Labor.**

The right reserved to each citizen by the constitution to contract for his labor is subject to no restraint, except where the public safety, health, peace, morals, or general welfare demand it, and then only where the legislative department, in the exercise of its police power, selects a proper subject for its exercise and prescribes reasonable and appropriate regulations.—P. 503.

6. **Constitutional Law — Statutory Construction — Master and Servant—Hours of Labor—Attempted Regulation.**

The so-called "Women and Children Act" (Sess. Laws 1903, c. 138), which prohibits the employment of women for more than eight hours a day in any mill, factory, manufacturing establishment, or store, where such labor requires them to stand upon their feet, is invalid, as applied to laundries, in that the general assembly failed to declare that such business or occupation is injurious to health; and this is true, whether the legislative power to regulate hours of employment is based upon § 25a, art. 5, Colo. const., requiring the general assembly to fix an eight-hour day in branches of industry considered injurious to health, or upon the general unwritten police power that resides in the legislative branch of our state government.—P. 504.

*Error to the District Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

Frank Burcher, W. J. Kirk, Charles L. Kirk, and The Colorado Towel Supply Company were convicted of violating the "Women and Children Labor Act," and they bring error.     *Reversed.*

Decision *en banc*.

Mr. Fred W. Parks, for plaintiffs in error.

Mr. Wm. H. Dickson, Attorney General and Mr. Samuel Huston Thompson, Assistant Attorney General (Mr. W. F. Hynes, of counsel), for the people.

Mr. Justice Campbell delivered the opinion of the court:

Defendants were tried and convicted under an

information charging them with violating the provisions of section 3 of the so-called "Women and Children Labor Act" of 1903 (Session Laws 1903, p. 309; 3 Mills' [Rev.] Stats. 757). It reads:

"No woman of sixteen years of age or more shall be required to work or labor for a greater number than eight hours in the twenty-four-hour day, in any mill, factory, manufacturing establishment, shop, or store, for any person, agent, firm, company, copartnership or corporation, where such labor, work or occupation, by its nature, requires the woman to stand or be upon her feet, in order to satisfactorily perform her labors, work or duty in such occupation or employment."

The title of the act is:

"An act to prescribe and regulate the hours of employment for women and children in mills, factories, manufacturing establishments, shops, stores, and any other occupation which may be deemed unhealthful or dangerous, and to repeal all acts and parts of acts in conflict herewith."

After defendants' motion to quash the information was overruled, they waived a jury, and submitted the case to the court upon an agreed statement of facts, and the court found them guilty of a misdemeanor and sentenced them to pay a fine. The salient facts are that defendants were engaged in operating a steam laundry in the city of Denver, in which they had a number of machines and employed a large number of men and women; that the building in which the business was carried on consisted of a ground floor and basement, well lighted by windows from side and rear, well ventilated and heated, connected with which were good sewerage and drainage, and no escaping gases or other unhealthy conditions surrounded the work, and the water and soap used were pure. Belle Johnson, a

32

woman over the age of sixteen years, was employed in this laundry by them, and her work consisted in operating a shirt body ironer, which necessitated her to stand upon her feet; that under the contract of employment she was required to, and did, thus work more than eight hours a day, to wit, about fifty-five hours a week, and averaging about nine hours per day in the twenty-four-hour day.

On this review, as below, the facts being agreed upon, the only disputed question reserved and argued is one of law: Whether foregoing section 3 is valid. Defendants challenge its validity upon a number of grounds, only two of which we shall consider, as our decision on them makes the section void and compels us to reverse the judgment with instructions to discharge the defendants from custody.

The two grounds may thus be stated: (1) The subject-matter of the section is not clearly, or at all, expressed in the title of the act, as section 21 of article 5 of our constitution requires; (2) The general assembly has not in this act, or elsewhere, declared or considered the laundry business an occupation, or labor therein, injurious or dangerous to health, life or limb, which is an essential condition precedent to the validity of an enactment of this character, whether it is based upon the eight-hour amendment to the constitution adopted in 1902, and now known as section 25a of article 5 of the constitution, or upon the general unwritten police power that resides in the legislative branch of our state government.

As the attorney general in his brief and oral argument gave as the authority of the general assembly to enact this statute, the so-called eight-hour constitutional amendment, we here insert the same:

"The general assembly shall provide by law, and shall prescribe suitable penalties for the viola-

tion thereof, for a period of employment not to
exceed eight (8) hours within any twenty-four (24)
hours (except in cases of emergency where life or
property is in imminent danger), for persons em-
ployed in underground mines or other underground
workings, blast furnaces, smelters; and any ore-re-
duction works or other branch of industry or labor'
that the general assembly may consider injurious
or dangerous to health, life or limb."—Laws 1901,
p. 109.

As affecting the first assignment, it makes no
difference whether authority for this act is the fore-
going constitutional amendment or the unwritten
police power if, in essential character, they differ.
Whether the subject-matter of section 3 is clearly
expressed in the title must be determined by their
own contents, and without regard to the source of the
power of which the act itself is an expression. This
title has to do with a regulation of the hours of em-
ployment for women and children in certain enumer-
ated, and other indefinite and unnamed, occupations,
which occupations, in and of themselves, may be
deemed unhealthful or dangerous. This the attor-
ney general concedes, but contends that the words
of the amendment, "or other branch of industry or
labor," make it competent for the general assembly
to regulate the hours of employment, not only where
the occupation or branch of industry itself is injuri-
ous or dangerous, but also where the "labor" is of
that character. That is to say, even though the par-
ticular occupation or place of work is perfectly safe
and healthful, yet if the labor therein or thereat is
injurious or unhealthful, the general assembly may,
nevertheless, limit the number of hours persons shall
be employed in that labor. And the attorney gen-
eral says that it is under the authority conferred by
section 25a of article 5 thus to regulate hours of em-

ployment where "labor," as contradistinguished from "branch of industry," is dangerous or unhealthful, that section 3 was enacted.

If such be the authority for this section, and if such interpretation thereof be correct (and concerning this and the applicability of the amendment to this statute and this case we express no opinion), it is certainly just as true that in this title there is not a word about regulating employment where labor, as such, is injurious or unhealthful, but only where the occupation or branch of industry is of that character. It seems, therefore, necessarily to follow that the subject-matter of section 3, which treats of occupations which, for aught that is said therein to the contrary, are entirely safe and healthful, or which refer only to labor that might inferentially be deemed injurious or unhealthful, is not clearly, or at all, expressed in the title, which purports to regulate hours of employment only in dangerous or injurious occupations. —*In re Breene,* 14 Colo. 401. We hold that the body of section 3 is not clearly expressed in the title.

The second assignment, we think, is well laid; and here again, as to this objection, we also observe that it matters not whether the source of the power of this legislation is to be found in the express command contained in the constitutional amendment, or is inherent in the police power of the state. The question as to whether the general assembly, by this amendment, is given any greater power in making regulations concerning the unenumerated branches of "industry or labor" than that body theretofore and always has possessed as a part of its general legislative power, and certain other questions argued by counsel, we find it unnecessary to determine upon this review. And upon all questions not included in the two assignments determined, and as to the enforceability, meaning, scope and applicability of

this constitutional amendment, we withhold expression of opinion until a cause involving them is before us.

If the power to enact such legislation as this reposes in the amendment, or is inherently a part of the general legislative power belonging to the general assembly, it is entirely clear that the power itself must be exercised, in the first instance, by that law-making body. With the ultimate authority of the courts, as was held *In re Morgan,* 26 Colo. 415, to determine as to the validity of the exercise of the police power, both as to the subject selected and reasonableness of the regulation, we are not now concerned. But it is unquestionably true, and cannot be, and is not, controverted, that the legislative branch of government alone has the authority, and is charged with the duty, of enacting such regulations, and cannot relinquish or delegate it to either of the other great co-ordinate departments of government. That this is the correct doctrine is declared by all the cases, and by every author and jurist who has spoken on the subject.

The amendment recognizes this doctrine when, after specifying particular occupations in which the period of employment is prescribed, it adds, "or other branch of industry or labor that the general assembly may consider injurious or dangerous to health, life or limb." Here we have, as to unnamed branches of industry and labor, the express limitation that regulations concerning hours of employment in them must be restricted to those which the general assembly may consider injurious or dangerous to health, life or limb. We look in vain to find that the general assembly in section 3, or in any part of this, or any other, act, has considered or declared the laundry business, or even labor therein of any kind, either injurious or dangerous. The mere general

prohibition of employment in harmless occupations beyond, or in excess of, specified hours is not the equivalent of a solemn finding and declaration of the general assembly that such occupations are injurious or dangerous. The amendment contemplates that not until after the general assembly has considered and enacted that they are of that character can regulations of employment therein, and prohibition of labor beyond a certain time, be made effective, or violations thereof punished as a crime or misdemeanor.

In marked contrast with this act is the act of the fifteenth general assembly, found in Session Laws of 1905, p. 284. In that act the general assembly was evidently intending to carry out the mandate of the constitutional amendment that is here invoked. That title is:

"An act to declare certain employments injurious and dangerous to health, life and limb; regulating the hours of employment in underground mines and other underground workings, in smelters and ore-reduction works, in stamp mills, in chlorination and cyanide mills, and employment about or attending blast furnaces, and providing a penalty for the violation thereof."

The occupations named in section 1 of the act of 1905, which include all of those expressly enumerated in the constitutional amendment, and several others assumed by the general assembly to be of similar character and hence within the language of the amendment "any other branch of industry or labor," are, by the general assembly, expressly "declared dangerous and injurious to health, life and limb," and this declaration is immediately followed by a provision that the period of employment for all persons employed in such occupations shall be eight hours per day.

Here we find that the general assembly conceived that its duty under this amendment was, first, to declare certain occupations to be dangerous or injurious, and then to make the desired regulations concerning the hours of employment. This method was entirely ignored in the act which we are considering.

Reading the act of 1903 in its entirety, it is plain that our general assembly did not purport to say, and did not intend to declare, what occupations were, in its judgment, dangerous or injurious, and, therefore, occupations of such a character as to justify regulations of hours or labor therein, for in section 2 it said:

"All paper mills, cotton mills and factories where wearing apparel for men and women is made, ore-reduction mills or smelters, factories, shops of all kinds and stores may be held to be unhealthful and dangerous occupations within the meaning of this act at the discretion of the court."

It must be borne in mind, as the attorney general must concede, that under our constitution the right of contracting for one's labor is reserved and guaranteed to every citizen. It is subject to no restraint except where the public safety, health, peace, morals or general welfare demands it, and then only where the legislative department of the state government, in the exercise of its police power, selects a proper subject for its exercise and prescribes reasonable and appropriate regulations. In the absence, therefore, of a legitimate exercise by the general assembly of this power by a declaration to the contrary, the defendants might lawfully by contract require a woman to work more than eight hours per day in their laundry.

Yet here is an attempted relinquishment by the law-making body of that very power of legislation,

and a futile effort to confer upon the courts the authority to make such laws, by saying, in their discretion, and in the first instance, and with no previous declaration on the subject by the general assembly, what occupations are unhealthful and dangerous. This is a palpable evasion of duty, coupled with an abortive attempt to give to the courts legislative power to make crimes and misdemeanors out of acts which are not in violation of any valid legislative enactment.

It is manifest, therefore, that, as to section 3, at least one essential condition precedent to the validity of enactments of this kind is lacking, namely, the considering or finding by the general assembly that the occupation in question is of a character concerning which only can it, in any event, adopt such regulations as are assumed to be contained in this act.

If this, however, were not so, this judgment must be reversed, for if the courts have the power which section 2 ineffectually tries to give them, the laundry business must be considered healthful; for counsel themselves, in their stipulation of facts, on which the record shows the cause was decided, are in accord that such occupation is healthful. Upon the two grounds discussed, we hold section 3 to be unconstitutional and void.

The judgment must be reversed and the cause remanded with instructions to quash the information and discharge the defendants from custody.

*Reversed.*

Decision *en banc,* all the justices concurring except CHIEF JUSTICE STEELE, who dissents.