[No. 6274.]

CITY OF GOLDFIELD vs. MacDONALD, ET AL.

PLEADING—*Judgment on Demurrer—Construction*—A demurrer to a complaint, assigning several causes, is sustained by general judgment. The effect of such judgment is to resolve all questions presented by the demurrer in favor of the demurrant.

One ground of demurrer being the absence of capacity to sue, amendment is impossible, and the plaintiff must stand by his case as made—(148).

2. ——Defects of Form—Remedy—Where a complaint states a cause of action a demurrer because the allegations are informal or incomplete will not lie. The remedy is by motion—(149)..

3. FRAUD—Equitable Relief—Parties having or claiming a water right collude with a majority of the members of a municipal council to purchase such water right on behalf of the municipality, for a sum greatly in excess of its value. The conspiracy is carried into execution, and obligations purporting to be the obligations of the city are issued for the exaggerated valuation. Some of these pass into the hands of the corrupted members of the council, some to the other parties to the fraudulent combination, and some to third persons. The city may maintain an equitable action for relief, against all these parties—(151, 152).

All questions as to the rights of bona fide purchasers were reserved—(152).

_Error to Denver District Court._—HON. SAMUEL L. CARPENTER, Judge.

Mr. J. McD. LIVESAY and Messrs. THOMAS, BRYANT & MALBURN for plaintiff in error.

Messrs. VAN CISE & GRANT for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The action is for the cancellation of certain outstanding municipal obligations of the city of Goldfield, referred to as "water right obligations," the precise form of which is set out at length in the complaint. The allegations of the complaint disclose, in substance, this state of facts:

That prior to the 12th day of November, 1900, the defendants, Minnie, Christina, Tenna and Kittie MacDonald, now Kittie Eliason, were the owners of an undivided half of ten acres of land described in the complaint;

that these defendants, with one John MacDonald, who was then acting as attorney in fact for the other MacDonalds as well as for himself, claimed to own an undivided one-half of a pretended water right, said to be connected with the land. The defendants, Smith, Collins, LaKamp and Allen, were members of the city council of the city of Goldfield, which consisted of a mayor and six aldermen; that the defendants, Hoyt, Parks and Little, were attorneys at law and acted in an advisory capacity to Smith, Collins, LaKamp and Allen, as members of the city council, and also represented and acted for the MacDonalds in the transactions involved in this suit.

That prior to November 12th, 1900, the defendants, the MacDonalds, for the purpose of defrauding the city of Goldfield, entered into an agreement with the defendants, Smith, Collins, LaKamp and Allen, and Hoyt, Parks and Little, whereby it was agreed that the MacDonalds should offer to sell, and did sell to that city, the land and water right described for $30,000 in water right obligations of the city of Goldfield; that when the proposition should be submitted to the city council, Smith, Collins, LaKamp and Allen, in their official capacity as members of the council, should vote to accept the proposition on behalf of the city, and should order the issuance of the water right obligations in payment therefor.

That on or about October 12th a proposition in writing was submitted in behalf of the MacDonalds to said four members of the council, proposing to sell said property to the city, and to carry out this deal thirty or more obligations for $1,000 each were prepared and lithographed in words and figures as pleaded. It was also arranged that LaKamp, president of the council, should sign and execute the obligations, and all necessary details were arranged for the immediate delivery thereof to John

MacDonald.    A deed conveying the land and water rights to the city was prepared, executed and signed on November 12th, ready for delivery prior to the acceptance of the proposition.

On November 12th a regular meeting of the city council was held, at which meeting the proposition of sale was first presented; also a resolution, which purported to accept the proposition for the city and to authorize the issuance of the water obligations.

Immediately on the passage of the resolution, on November 12th, LaKamp signed the obligations. The next morning he caused the city clerk to attest his signature and the seal of the city to be impressed thereon. They were delivered to the MacDonalds and other unknown parties, and were secretly taken away to hinder the taxpayers of the city from bringing suit to prevent their delivery and disposal. These obligations were never presented to the mayor for signing and were never signed by him. No ordinance providing for the purchase and issuance of these obligations was ever passed by the city; nor was the proposition to purchase the property in question submitted to the taxpaying voters.

The defendants Smith, Collins, LaKamp and Allen were to and did receive a part of the water right obligations, or the proceeds thereof, for voting for and carrying out the fraudulent purchase scheme. The land and alleged water rights were not worth to exceed $2,000, and were and are of no use whatever to the plaintiff, which the defendants well knew, and in selling same to the city they intended to defraud the city of $30,000; that the obligations are fraudulent and void, as the city never received any valuable or adequate consideration therefor.

On April 15th, 1901, a new city council was inducted into office, whereupon, and at the earliest possible

moment, it passed a resolution declaring all of the acts done by defendants Smith, Collins, LaKamp and Allen, in carrying out said scheme, to be wholly fraudulent and void. On April 22nd, 1901, the city by resolution authorized and instructed the mayor to reconvey said land and water rights to the MacDonalds; that deeds attested by the city clerk have been made out, executed and sent to John MacDonald, reconveying same accordingly.

Prior to April 15th, 1901, defendants Smith, Collins, LaKamp and Allen were members of the council and parties to the fraud, and it was impossible to induce them to take any action to cancel the obligations. Defendants MacDonalds, Eliason, Hoyt, Parks and Little have in their possession a number of these obligations and are using every endeavor to dispose of them, and the defendant, The Struby-Estabrook Company, has two of them, which are held as security for the personal debts of John MacDonald, all of which will be disposed of if not enjoined. That plaintiff has no speedy or adequate remedy at law. Then follows an allegation of urgency, with prayer for temporary and final relief.

A demurrer was interposed to the complaint on three separate grounds:

1. That it does not state facts sufficient to state a cause of action against all, or any one, or either, of the defendants;

2. That the plaintiff has no legal capacity to sue; that is to say, that this action is misconceived and cannot be maintained by plaintiff, as it is without power or authority to do so; and,

3. That the complaint is ambiguous, unintelligible and uncertain, in that it does not connect the matters and things alleged with the defendants or either of them, and does not state the place, day or date of any of the sup-

posed facts; nor which, if any, of the defendants per formed the alleged acts; that the allegations thereof, so far as the defendants are concerned, are general and not specific as to any one defendant.

The court below sustained the demurrer, and, the plaintiff failing to amend, rendered a judgment of dismissal. The case is brought here on error to review the ruling of the court upon the demurrer and its action in dismissing the complaint.

The order sustaining the demurrer is general, and means that the court held the complaint bad for all the legal reasons assigned; that is, the court resolved every legal issue tendered by the demurrer in favor of the defendants. In legal effect this ruling was to hold: 1. That the complaint states no cause of action; 2. That the plaintiff, the city of Goldfield, is without legal capacity to sue; and, 3. That the complaint is ambiguous, uncertain and unintelligible.

If the court meant to hold the complaint bad simply because of uncertainty, ambiguity or unintelligibility, it was its duty to so advise, and then doubtless an attempt would have been made to amend it in conformity with such ruling. But when it was held that plaintiff had no legal capacity to sue, and that no cause of action was stated, amendment was impossible, and plaintiff could do nothing except stand by its cause as made.

The ruling on the demurrer was wrong and the judgment of dismissal based thereon cannot stand. There is neither suggestion nor pretence anywhere in argument that the plaintiff is without legal capacity to sue, and we can conceive of no reason upon which such holding can be supported. We are also of the opinion that a cause of action is stated in the complaint, and that it was error to hold otherwise.

·For the sake of argument, let it be admitted that the plaintiff should have stated more definitely and specific- ally the dates, places and other details connected with the fraudulent acts and conduct charged; yet, with all those matters, to which the special demurrer may fairly be said to refer, absent from the complaint, sufficient is alleged to constitute a cause of action and put the defendants to answer. Furthermore, the special demurrer is too in- definite to deserve serious attention. It does not, with sufficient certainty, point out the specific and precise de- fects complained of, and is itself, therefore, without merit. · The rule is, that when a complaint states a cause of action, a demurrer because of incomplete, imperfect and informal allegations will not lie; if the defendant desires to have the facts alleged with greater particularity, that result must be sought by motion.

Pomeroy's Code Remedies, 4th Ed., Secs. 442, 443, speaking to this point, says:

"The codes clearly intend to draw a broad line of distinction between an entire failure to state any cause of action or defense, on the one side, which is to be taken advantage of either by the general demurrer for want of sufficient facts, or by the exclusion of all evidence at the trial, and the statement of a cause of action or a defense in an insufficient, imperfect, incomplete, or informal man- ner, which is to be corrected by a motion to render the pleading more definite and certain by amendment. The courts have, in the main, endeavored to preserve this dis- tinction, but not always with success; since averments have sometimes been treated as merely incomplete, and the pleadings containing them have been sustained on de- murrer, which appeared to state no cause of action or de- fense whatever; while, in other instances, pleadings have been pronounced wholly defective and therefore bad on

demurrer, or incapable of admitting any evidence, the allegations of which appear to have been simply imperfect or incomplete.  It is undoubtedly difficult to discriminate between these two conditions of partial and of total failure; and it is utterly impossible to frame any accurate general formula which shall define or describe the insufficiency, incompleteness or imperfectness of averment intended by the codes, and shall embrace all the possible instances within its terms.  By a comparison of the decided cases, some notion, however, may be obtained of the distinction, recognized if not definitely established by the courts, between the absolute deficiency which renders a pleading bad on demurrer or at the trial, and the incompleteness or imperfection of allegation which exposes it to amendment by motion; and in this manner alone can any light be thrown upon the nature of the insufficiency which is the subject of the present inquiry.

The true doctrine to be gathered from all the cases is, that if the substantial facts which constitute a cause of action are stated in a complaint or petition, or can be inferred by reasonable intendment from the matters which are set forth, although the allegations of these facts are imperfect, incomplete, and defective, such insufficiency pertaining, however, to the form rather than to the substance, the proper mode of correction is not by demurrer, nor by excluding evidence at the trial, but by motion before the trial to make the averments more definite and certain by amendment.  From the citations in the foot-note, it is clear that the courts have, with a considerable degree of unanimity, agreed upon this rule, and have in most instances applied it to the defects and mistakes having the same general features, and have sometimes severely strained the doctrine of liberal construction in order to enforce it.  *  *  *"

Succinctly stated, the complaint charges these ultimate facts: That the four defendants, the MacDonald women, in November, 1900, owned an undivided one-half interest in ten acres of land near the city of Goldfield; that they, together with John MacDonald, another defendant, owned a pretended water right connected with that land; that to the knowledge of all of the defendants this property was of no greater value than $2,000, and was of no use at all to the city of Goldfield; that the defendants Smith, Collins, LaKamp and Allen were then members of the town council of the city of Goldfield, which consisted of six members; that the defendants Parks, Little and Hoyt were attorneys at law representing the MacDonalds, and at the same time advising these four councilmen; that these several defendants, for the purpose of defrauding the city of Goldfield, conspired and confederated together to sell the interest in the land and the water right in question to that city for $30,000, using the good offices of these councilmen, in their official capacity, to put through the deal, issue water right obligations of the city for the agreed purchase price and divide the proceeds; and that the deal was consummated, the obligations issued, and a division of the spoils made, the four councilmen having sold their official acts to accomplish this result. There is no ambiguity, no uncertainty and no unintelligibility about this statement of facts. The defects in the complaint, if any, are not of substance, but consist rather in informal, imperfect and incomplete statements of facts, and are to be remedied, if at all, as we have already seen, by motion pointing out specifically and particularly the precise matters of which complaint in this respect is made. Manifestly there is an infinitude of detail, connected with a transaction such as is here under consideration, which could be stated, and

some of which details, possibly, on motion, the plaintiffs might properly be required to set forth. But that the facts as alleged state a cause of action, requiring answer from the defendants, cannot be successfully challenged. It is a plain, clear and explicit charge of official wrong-doing by the four councilmen for a money consideration, which, if true, and for the purposes of the demurrer these material facts which we hold have been well pleaded are admitted to be true, renders the supposed obligations utterly void.

If the charges made are true, then the conduct of these officials is condemned on every principle of law, justice, morality and public policy, and the plaintiff city has an undoubted right to have these unholy obligations canceled and held for naught. The cause ought to be tried upon its merits, and the defendants, above all others, if innocent of wrongdoing, should be here insisting upon such action, rather than contending and defending on mere technicalities.

We leave the questions argued in the briefs, as to whether the loan should have been authorized by ordinance, whether the seal of the city should have been attached to the obligations, whether they should have been signed by the mayor; whether the length of time for which they were to run is in conflict with the statute, whether they were issued for a purpose for which the city was authorized to issue negotiable paper, and other kindred questions, undetermined; so also any and all proper questions which may be hereafter urged by alleged innocent holders for value of any of these obligations.

Citations of authorities to support the views here expressed, relative to the legality of these obligations, if issued in manner and form and upon the considerations alleged, seems unnecessary. However, we have examined

with care the following and find in them ample and satis-
factory support for our conclusion on this point, should ·
the alleged facts of corruption, upon a trial of the merits,
prove well founded :  1 Bigelow on Fraud, pp. 319, 320; ·
Cook on Corporations, sec. 648; Mechem on Agency,
secs. 464-467 and 461-463; Perry on Trusts, sec. 207;
*Morgan v. King,* 27 Colo. 539; *Wardell v. Railroad Co.,*
103 U. S. 651; *Wright v. Rindskopf,* 43 Wis. 344; 3
Clark & Marshall on Private Corporations, p. 2289, sec.
757; Smith on Municipal Corporations, sec. 739; *Snipes
v. City of Winston,* 126 N. C. 374; *Santa Ana Water
Co. v. Town of San Buenaventura,* 65 Fed. 321; *Oscan-
yan v. Arms Co.,* 103 U. S. 261; *Meguire v. Corwine,*
101 U. S. 108; *Lee v. Johnson,* 116 U. S. 48; *Lucas v.
Allen,* 80 Ky. 681; *City of Concordia v. Hagaman,* 1
Kan. App. 35; and *Carter-Crume Co. v. Perrung,* 86 Fed.
439.

The judgment is reversed and the cause remanded
with instructions to the lower court to allow defendants
to file a motion to make the complaint more specific, or
grant leave to plaintiff, if it shall so apply, to amend its ·
complaint, amending generally, as it may be advised.

Reversed and remanded with instructions.

Mr. JUSTICE MUSSER and Mr. JUSTICE WHITE,
concur.