No. 18,293.

Thomas E. Davis (18,293), Ralph Curtis Mason (18,292), Judge Solon Hinton (18,283) and Jack Von Pickrell (18,299) v. City and County of Denver.

(342 P. [2d] 674)

Decided July 20, 1959.

32

Mr. Francis P. O'Neill, Mr. Walter L. Gerash, for plaintiffs in error.

Mr. John C. Banks, Mr. James P. McGruder, for defendant in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

The plaintiffs in error in these several cases were defendants in the Superior Court of the City and County of Denver. They seek reversal of judgments imposing fines and jail sentences for violating an ordinance pro-

hibiting the operation of a motor vehicle while operators' licenses were suspended. We will determine the several writs of error in a single opinion. The cases were tried in January of the year 1957.. Apparently the prosecutions were separate and were conducted under the procedure which then obtained, that is to say, the cases were treated as civil actions rather than as criminal prosecutions. The charge in each instance was that the defendant had violated Section 513.17-2 (1) [506.4] of the Denver Municipal Code which punishes the driving of a motor vehicle while the operator's license has been suspended or revoked.

Various questions are presented in the briefs, but inasmuch as the prosecution of the writs of error here had antedated our decision in *City of Canon City v. Merris,* 137 Colo. 169, 323 P. (2d) 614, supplemental briefs were requested on the question of applicability of that decision to the present cases. These briefs are now submitted, and our disposition will be made on the supplemental issues. Determination of the original questions are unnecessary to the disposition of the issues now presented.

The ordinance under which the defendants were prosecuted reads as follows:

"513-17-2 (1). *Driving while license denied, cancelled, suspended or revoked or driving without a license.* It shall be unlawful for any person, either resident or non-resident, whose operator's or chauffeur's license or driving privilege has been suspended, or revoked as provided by the Motor Vehicle Division, State of Colorado, or any other state, to drive any motor vehicle on any public highway, street or alley, in the City and County of Denver at any time when said license or privilege is denied, cancelled, suspended or revoked * * *."

The State of Colorado also has a statute dealing with the subject of driving while license is suspended or revoked. This is found in C.R.S. 1953, 13-3-31 (1), 1957

Cum. Supp. (as amended in 1955), and this provides:

*"Driving while license is suspended or revoked — penalty.*— (1) Any person who shall drive any motor vehicle upon any highway of this state at a time when his operator's, minor operator's or chauffeur's license or driving privilege, either as a resident or nonresident, is denied, suspended, cancelled, or revoked, shall be guilty of a misdemeanor and upon conviction shall be punished by imprisonment for not less than one day or more than six months, or by a fine of not less than fifty dollars or more than five hundred dollars, or by both such fine and imprisonment."

A provision of the Denver Ordinances pertinent to the present inquiry is that which imposes penalty. This is a general penalty ordinance which provides for imposition of a fine not exceeding $300.00 and for imprisonment not to exceed 90 days. Section .10 Municipal Code.

It is noteworthy that although the definition of the offense contained in the statute, and that of the ordinance are substantially the same, the penalty prescribed by the ordinance is considerably less than that set forth in the statute.

1. The failure of the trial court to treat the cases as criminal and to extend to defendants the rights which belong to one charged with a criminal offense does not justify reversal of the cases under the circumstances presented by the records before us. Rather they are governed by our decision in *Geer v. Alaniz,* 138 Colo. 177, 321 P. (2d) 260, wherein it was held that such rights must be asserted and that failure to demand trial by jury, or other alienable rights to which persons charged with crime are entitled, results in a waiver.

2. The validity of the ordinance under which the prosecution was conducted is, however, subject to review and the judgment is subject to reversal if it is decided that the particular ordinance was void.

Determination of the question whether the City had authority to enact the ordinance which punishes the

driving of a vehicle while license is revoked or suspended must be based upon a decision whether the matter is one of local or municipal concern or of general and state-wide concern.

A home-rule city is granted exclusive power over matters local and municipal. This authority is contained in the Constitution of Colorado, Article XX, Section 6, which in part provides:

"The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters."

▮ Under the above section, once it is clear that the subject matter is local and municipal, the enactment of an ordinance supersedes a state statute. *Denver v. Henry,* 95 Colo. 582, 38 P. (2d) 895. Matters local are then the exclusive domain of the municipality. Where the matter is not local and municipal, the City, even though a home-rule municipality, derives no authority from Article XX.

▮ There is no constitutional provision corresponding to Article XX which confers jurisdiction on the State and requires that in matters of general interest the regulation be conducted by the State alone to the exclusion of the City. It would thus seem to follow that outside and beyond Article XX, in the area of State control, the City is an agency of the State and is subject to control by the Assembly. *Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777; *Denver v. Hallett,* 34 Colo. 393, 83 Pac. 1066; *Londoner v. Denver,* 52 Colo. 151, 119 Pac. 156; *People v. McNichols,* 91 Colo. 141, 13 P. (2d) 266.

▮ The City does not, and indeed could not, contend that the licensing and regulation of vehicle operators is a matter exclusively local and municipal within Article XX, Section 6, supra, so that enactment of the ordinance would supersede a statute on the same subject. Counsel argue that even though the subject is general in scope,

the City is not precluded from enacting an ordinance in the aid of the policy declared in the statute. The difficulty with this position is that under our governmental system it is not possible for the City to derive authority from Article XX, supra, based upon the fact that a subject is a "little bit" local. If the subject is local, the City has, under Article XX, exclusive authority. If it is predominantly of general interest, the State has the power to act and in this latter situation the City can exercise authority only with the consent of the State.

Undoubtedly the State was motivated by the necessity for establishing a uniform and integrated state-wide policy fixing standards for the issuance of operators' licenses to persons driving vehicles. Even though the problem may be particularly serious within the borders of a municipality, it is nevertheless apparent that varying standards would create an intolerable condition. Power to establish a licensing system would seem to carry with it authority to make provision for revocation and furthermore to penalize the driving of a motor vehicle without a license or while such license is revoked or suspended. These considerations dictate our conclusion that the subject is predominantly state-wide and general. The City, of course, is interested in preventing unlicensed drivers on its streets. However, it is impossible to perceive any beneficial result from an ordinance which deals with the identical subject covered by a state statute.

The City maintains that *Canon City v. Merris,* supra, envisaged the condition which is now presented, that is, an ordinance and a statute on the identical subject existing side by side when it was said therein:

"Even though an ordinance effectually covers a local and municipal matter, and it is a counter-part of a law of the state, its violation is triable and punishable as a crime where so designated by the statute."

When the above language is considered in full context, it is apparent that the Court was referring to

the necessity for recognition of criminal trial standards in those areas of local and municipal affairs wherein there is a state statute which recognizes the act or conduct as a crime. This language was not intended to approve concurrent legislation on matters of general concern. A "counter-part" ordinance mentioned in the *Merris case* is one which deals with a local and municipal matter, enactment of which supersedes the state statute on the subject within the boundaries of the municipality.

3. The question remains whether the City is at liberty to adopt an ordinance in furtherance of the policy of the State as expressed in a statute. This question must, under the present circumstances, be answered in the negative. Article XX of the Constitution does not grant to the City authority to regulate matters of general and state-wide concern and, as indicated above, this power can be exercised by municipalities *only* if the State consents to its exercise and provided that the matter, although predominantly general, is one in which the municipality has sufficient interest to warrant the delegation of power to it. It is well settled that delegation of legislative authority from the State to the municipality is proper in these circumstances, 37 Am. Jur. 720, Sec. 111, *Municipal Corporations;* 11 Am. Jur. 935, *Constitutional Law,* Sec. 224; 2 McQuillin Municipal Corporations 592, Sec. 10.08 (3d ed.); Rhyne, Municipal Law 73, Sec. 4-9; 147 A.L.R. 1342 (a note); 2 Dillon Municipal Corporations (5th ed.), Sec. 632, p. 967. The latter text clearly recognizes the propriety of such delegation and cites the Colorado case of *Hughes v. People,* 8 Colo. 536, 538, 9 Pac. 50, in support of the following statement:

" * * * Where the act is, in its nature, one which constitutes two offences, one against the State and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offence under the State law; but the legislative intention that this may be done ought to be manifest

and unmistakable, or the power in the corporation should be held not to exist."

The power to so delegate is, of course, subject to the limitation that the State cannot surrender its sovereignty with respect to subjects exclusively state-wide and general. However, the authority of the State to delegate police powers to the municipality in those areas where the subject matter, although predominantly general is also to some extent municipal, seems to be approved practice. See 16 C.J.S. 909, 910, *Constitutional Law*, Sec. 178. See also 62 C.J.S. 286, 287, *Municipal Corporations*, Sec. 143. The author of this text declares:

" * * * The legislature may delegate to municipal corporations power to adopt and enforce particular ordinances, even though general statutes exist relating to the same subjects; and, where the charter or legislation confers on a municipality express power to legislate on a particular subject, both state and city may legislate thereon even though it is not a subject of local concern. If an affair is partly state and partly local, the city is free to act until the state has intervened. The legislature can itself exercise in the first instance any power to that end which it could delegate to its municipalities, and it can enact directly for such municipalities any law that it could indirectly enact by delegating to them the power to pass it.

"*Police power.* A municipal corporation may exercise police power on the subjects connected with municipal concerns which are also proper for state legislation, and, where the state has not spoken, the position of a municipal corporation in this regard is analogous to that of the state to the federal government with reference to matters of interstate commerce. In the absence of constitutional limitations the legislature may confer police power on a muncipal corporation over subjects within the provisions of existing state laws, and ordinarily, if there is no conflict with general law, municipal corpora-

tions, under their general police powers, may regulate on municipal subjects on which the state has acted."

It is possible to find general language in decisions which apparently forbids this type of delegation. In fact, it is a subject with respect to which there exists a great deal of confusion. However, it would appear that a majority of courts in the United States approve the type of limited delegation which is described above. A representative decision dealing with a traffic situation is that of the Supreme Court of Illinois in *City of Evanston v. Wazau*, 364 Ill. 198, 4 N.E. (2d) 78. There the municipality of Evanston had enacted an ordinance providing for compulsory inspection of motor vehicles owned by residents of that city. The ordinance was based upon an Illinois statute authorizing cities and towns to enact legislation providing for such inspection. The validity of this delegation of authority was expressly questioned. The Illinois Court in upholding the procedure said:

" * * * Neither the Fourteenth Amendment to the Federal Constitution nor any provision of the Constitution of this state was designed to interfere with the police power to enact and enforce laws for the protection of the health, peace, safety, morals, or general welfare of the people. Fenske Bros. v. Upholsterers' Union, 358 Ill. 239, 193 N.E. 112, 97 A.L.R. 1318; People v. Anderson, 355 Ill. 289, 189 N.E. 338. The same tests are applied to municipal ordinances (Koos v. Saunders, 349 Ill. 442, 182 N.E. 415), and the Legislature may confer upon cities police power over subjects which are also within the provisions of the state laws. City of Chicago v. Union Ice Cream Mfg. Co., 252 Ill. 311, 96 N.E. 872, Ann. Cas. 1912D, 675. Common knowledge of the enormous and steadily increasing toll of deaths and injuries from automobile accidents undoubtedly actuated the Legislature in enacting the statutes requiring safe equipment and enabling municipalities to assist in the safety program by periodical inspection."

The earlier Illinois decision of *Chicago v. Union Ice Cream Mfg. Co.,* cited in the Evanston case, was a fully reasoned pronouncement involving exercise by the City of Chicago with the consent of the Legislature of authority to enact a pure food ordinance. That case held that both the state law and the municipal ordinance could exist within the municipality and that there could be separate prosecutions for violation of the ordinance and statute. This latter we regard as the substantive evil to be avoided in allowing both the state statute and an ordinance to exist within the municipality boundaries. However, in *Canon City v. Merris,* it was held that such double prosecutions are unconstitutional and invalid and we adhere to this salutary decision and when this safeguard is recognized and enforced, we are unable to see that any dire consequences can follow a ruling which recognizes the right of the general assembly to authorize municipalities to legislate on subjects which the assembly finds susceptible to municipal regulation, even though there is a statute on the same subject.

The case of *Blumenthal v. City of Cheyenne,* 64 Wyo., 75, 186 P. (2d) 556, cited with approval in *Canon City v. Merris,* recognizes the propriety of the type of delegation which is here under discussion.

To hold that matters which are general are the exclusive preserve of the state, just as matters local and municipal can be regulated only by the city (once the city has acted) would create a highly inflexible system and would require the state or city to obtain a continuous stream of rulings from this Court as to whether a subject is local or state-wide. This kind of strait-jacket" rule is inappropriate to the changing society in which we live and *Canon City v. Merris,* supra, should not be construed as so holding.

The comment of Professor Austin Scott, Jr., in 30 Rocky Mountain Law Review, 267 at page 283, is pertinent:

" * * * As to the other great point of the *Merris* case

— the rule of mutual exclusion of state and home rule municipal power — the court is on less firm ground. Why should not both city and state have concurrent power in some situations to punish the same conduct? True, the offender should not be separately punished by both city and state, but the way to prevent double punishment is not to restrict the city's ordinance power; characterizing the municipal violation as criminal, and recognizing the fact that the city is not a separate sovereign from its creator the state, will effectively preclude double punishment. In view of the fact that law enforcement is necessarily primarily in the hands of the municipal police forces, which in manpower greatly outnumber the members of the state police forces (to be found in the state highway patrol and the sheriffs' offices) it seems unfortunate so radically to reduce municipal power to deal with the minor offenses."

See also 72 Harvard Law Review 737, *Conflicts Between State and Municipal Ordinances.*

 The system which allows a state to delegate legislative power to municipal corporations and which permits the general assembly to find that it is necessary and appropriate to delegate the authority violates neither the Constitution nor any substantive principle. It appeals to us as a sensible approach to the solution of the continuing conflicts between state and municipal laws.

 In the instant case neither the Motor Vehicle Code nor any other state statute has delegated or consented to the exercise of the particular authority which is here in question. C.R.S. 1953, 13-4-7, recognizes the power of municipalities to regulate in particular areas of traffic, and acknowledges the right of the municipality to regulate on subjects such as parking of vehicles, flow of traffic through control signals, creation of one-way streets, regulating speed and traffic at intersections, but it does not specifically approve the right of a municipality to punish the operator of a vehicle who drives

without a license. Consequently, we must conclude that this authority has been pre-empted by the State and has been withheld from the municipality.

4. Another and independent reason for holding that the ordinance in question is ultra vires is the conflict in penalty which has been pointed out. The ordinance imposes a jail sentence of 90 days, whereas the statute imposes a jail sentence of 6 months. This reason, apart from the failure of the general assembly to manifest a consent to the exercise of authority, furnishes a basis for declaring the ordinance to be void. *Ray v. Denver,* 109 Colo. 74, 121 P. (2d) 886, 2 McQuillin (2d ed.) 683, 684.

We conclude, therefore, that the City lacked jurisdiction or authority to enact Section 513.17-2 (1), hence the ordinance was and is void and the convictions thereunder must be set aside.

The judgments are reversed with directions to dismiss the charges.

MR. JUSTICE FRANTZ and MR. JUSTICE HALL specially concur.

MR. JUSTICE FRANTZ specially concurring in the result:

My concurrence is in the result only; with the reasoning, and particularly with some of the language employed, I am in diametric disagreement.

"I deem it to be the duty of this court to breathe life and vitality into the constitutions of the state and the nation, to the end that they shall in a practical way accomplish for the individual the objectives intended by the people who adopted them as the supreme law of the land. I am not interested in mental gymnastics, the purpose of which is to search for some plausible excuse for holding a constitutional provision to be an empty shell when resorted to by one for whose benefit the provision was unquestionably intended.

"The danger which threatens our democratic proc-

esses does not stem from the actions of appellate courts which give strength, vitality and new life to constitutional provisions. The danger is that all too often courts of last resort fritter away constitutional protections, and little by little destroy the basic freedoms of which we speak so often and which we actually apply too seldom in bringing them within the reach of the citizen."

These eloquent paragraphs are taken from the specially concurring opinion of Mr. Justice Moore in the case of *Canon City v. Merris,* 137 Colo. 169, 323 P. (2d) 614, and they shall form the text for this opinion. In less lustrous language I believe the same call for a resurgent constitution was voiced by me when I said in *Noakes v. Gaiser,* 136 Colo. 73, 315 P. (2d) 183:

"We render threadbare the fundamental fabric of government, our Constitution, if we sanction legislation such as the guest statute. The language of our Constitution is significant; and if we would but seek we may seize the profoundest and most far-reaching meaning, by turning over each familiar word, and looking at it in the light of the primitive idea it was used to designate. Such quest for meaning would go far in restoring vigor and vitality to this fundamental document.

"Courts should fend the blow directed at their constitutional authority; instinctive self-preservation requires this; respect for, and the duty to uphold, the Constitution make judicial action to thwart curtailment of constitutionally imposed power mandatory."

The majority opinion represents an unintentional but nevertheless oblique break from traditional constitutional law which should provoke dissent. This I earnestly, humbly, yet firmly submit is the purport of language used in the majority opinion, and which we should scotch on reflection.

The offending language is typified in these three excerpts:

"There is no constitutional provision corresponding to Article XX which confers jurisdiction on the State and

requires that in matters of general interest the regula-
tion be conducted by the State alone to the exclusion of
the City."

"The question remains whether the City is at liberty
to adopt an ordinance in furtherance of the policy of the
State, as expressed in a statute. This question must,
under the present circumstances, be answered in the
negative. Article XX of the Constitution does not grant
to the City authority to regulate matters of general and
state-wide concern and, as indicated above, this power
can be exercised by municipalities *only* if the State con-
sents to its exercise and provided that the matter, al-
though predominantly general, is one in which the mu-
nicipality has sufficient interest to warrant the delega-
tion of power to it. It is well settled that delegation of
legislative authority from the State to the municipality
is proper in these circumstances."

"However, in *Canon City v. Merris,* it was held that
such double prosecutions are unconstitutional and in-
valid and we adhere to this salutary decision, and when
this safeguard is recognized and enforced, we are un-
able to see that any dire consequences can follow a rul-
ing which recognizes the right of the general assembly
to authorize municipalities to legislate on subjects which
the assembly finds susceptible to municipal regulation,
even though there is a statute on the same subject."

If one set about to destroy the Constitution by am-
bush, he could not do it more effectually than the unin-
tentional destruction accomplished here. Should we ac-
cept this language we will with one fell swoop permit
abdication of powers not of just one branch of the gov-
ernment, but of all three. The legislature will delegate
an authority over matters of general concern not within
its power to bestow; the Governor will let slip away
from him the approval or veto power over laws of state-
wide concern which is solely his to exercise; and the
judiciary by sanctioning the process will be acting in

contravention of its authority. These are no idle words, as I will attempt to show.

A home-rule city is not an enchanted municipality. A home-rule city is not a nasute city, able to have its nose in any business other than that which concerns it locally and municipally. By Article XX of the State Constitution, the city was authorized to assume by its charter any powers which were local and municipal or "of local concern." *People v. Sours,* 31 Colo. 369, 74 Pac. 167, 102 Am. St. R. 34; *Denver v. Hallett,* 34 Colo. 393, 83 Pac. 1066; *Pueblo v. Kurtz,* 66 Colo. 447, 182 Pac. 884. "It was intended to confer not only the powers specially mentioned, but to bestow upon the people of Denver every power possessed by the Legislature in the making of a charter for Denver." *Denver v. Hallett,* supra. What power has been granted by Article XX "has been fairly well settled by our decisions. It is 'Every power possessed by the legislature in the making of a charter for Denver.' * * * It is determined 'by ascertaining whether the legislature in the absence of Article XX could have conferred upon the municipality the power in question.' " *Denver v. Henry,* 95 Colo. 582, 38 P. (2d) 895.

It is therefore necessary to determine whether the legislature could have conferred upon Denver authority to adopt ordinances regulating matters of state-wide concern.

In determining this question we must keep in mind the object of Article XX. "The amendment is to be considered as a whole, in view of its express purpose of securing to the people of Denver absolute freedom from legislative interference in matters of local concern." *People v. Sours,* supra; *Mauff v. People,* 52 Colo. 501, 123 Pac. 101.

Thus, we observe that it was intended by Article XX to delegate to the people of Denver every power possessed by the legislature in making a charter; and that it was sought to release Denver from all legislative in-

terference in local and municipal matters. Without the home-rule provision Denver would have the status of a city in its conventional sense. "Since it is a creature of the state, * * *, a municipal corporation possesses such powers, and such only, as the state confers on it, and it follows that the municipal corporation may not extend its powers by definition. It exercises limited delegated authority." 62 C.J.S. 249, 250, §115. See *Inland Co. v. Schell,* 87 Colo. 73, 285 Pac. 771.

Article III of the Constitution of this state reposes "the powers of the government of this state" in "three distinct departments, — the legislative, executive and judicial"; and provides for the separation of these powers. Article V establishes the legislative department and directs that "the legislative power of the state shall be vested in the general assembly consisting of a senate and house of representatives." Other sections of Article V outline procedures for the introduction, consideration, passage and the signing of bills. By Article IV, Section 11, it becomes the sole duty of the Governor to approve or disapprove a bill passed by the general assembly.

An excellent statement of the law which I hold to be applicable, and which destroys the quoted excerpts from the majority opinion, is to be found in the leading case of *City of Milwaukee v. Sewerage Comm.,* 268 Wis. 342, 67 N.W. (2d) 624:

"It is a well settled rule, supported with practical unanimity by the authorities, that the general doctrine prohibiting the delegation of legislative authority has no application to the vesting in political subdivisions of power of government *matters which are local in scope.* For a great variety of purposes and governmental functions the Legislature may delegate *a part of its power over local subjects to public bodies.* 11 Am. Jur., Constitutional Law, p. 934, sec. 223. While the Legislature cannot delegate to towns its power to enact laws of a general nature, it may delegate to them the power to make and enforce laws relating to matters of local con-

cern. 52 Am. Jr., Towns and Townships, p. 485, sec. 24. The Legislature may impose upon political subdivisions created for the purpose of local government the authority as agents of the state to carry out and perform a state function or purpose. 16 C.J.S., Constitutional Law, §140, p. 398." (Emphasis supplied.)

Perhaps the rule and its application is shown to best advantage in another Wisconsin case. Reference is had to *First Creek Co. v. Village of Bayside,* 274 Wis. 533, 80 N.W. (2d) 437, in which the court stated:

"Because of the separation of powers of our system of government the legislative power of the state is, by our constitution, vested in the state legislature. Sec. 1, art. IV, Const. That power is very broad and is only limited by the provisions of the state and federal constitutions. Within that general legislative power was clearly embraced the power to create municipalities and to alter their boundaries. Prior to 1892 the legislature exercised this power and by legislative enactment altered the boundaries of many municipalities. However, in 1892, the state constitution was amended to prohibit the legislature from enacting special laws involving the incorporation of any city or village or amending the charter of any city or village. Sec. 31 (9), art. IV, Const. Thereafter the legislature broadened the annexing power of cities and villages and since that time annexations have been accomplished by municipal ordinances enacted pursuant to legislative authority. Secs. 62.07 and 61.185, Stats. Although vested with the legislative power, the legislature may delegate some of its powers as to matters of purely local concern to municipalities. By sec. 3, Art. IV, Const., apportionment of senate and assembly districts is made the duty of the legislature. *It is a matter of statewide concern and one that the legislature cannot delegate to municipalities.* Reapportionment has been accomplished by acts of the legislature and no municipality can nullify a law enacted by the legislature." (Emphasis supplied.)

The same principle is enunciated in *Maricopa Co. Municipal W. C. Dist. No. 1 v. La Prade,* 45 Ariz. 61, 40 P. (2d) 94, in these words:

"The next objection is that the act contains a number of instances of illegally delegated authority. It is universally held that *the Legislature cannot delegate its power of general legilation* to any individual, or group of individuals, however organized. Thalheimer v. Board of Supervisors, 11 Ariz. 430, 94 P. 1129; Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294. But it is also held that legislative power of a *purely local nature may be delegated* to political subdivisions created for the purpose of local self-government. Territory v. Town of Jerome, 7 Ariz. 320, 64 P. 417; Butte City Water Co. v. Baker, 196 U.S. 119, 25 S.Ct. 211, 49 L.Ed. 409." (Emphasis supplied.)

The Supreme Court of Illinois has expressed itself on the matter in this wise in *People v. City of Chicago,* 413 Ill. 315, 109 N.E. (2d) 201:

" * * * In many decisions of this court it has been pointed out that *the power to make laws for this State is vested in the legislature and is a sovereign power,* requiring the exercise of judgment and discretion. On common-law principles, as well as by settled constitutional law, it is a power which cannot be delegated to another body, authority or person. * * * The principle is also stated that the legislature must decide what the law shall be, and an act which vests any person or authority with arbitrary discretion to determine what the law shall be in a particular situation is invalid. * * * Still another recognized principle is, that while the legislature may not delegate its general legislative authority to decide what the law shall be, it may authorize others to do many things which it might properly but cannot understandingly or advantageously do itself. * * * Falling within the latter principle is the established view that it is not regarded that the rule against delegation of legislative power is violated *by vesting municipal*

*corporations with certain powers of legislation on subjects of purely local concern connected with their municipal affairs.* \* \* \* Overall, the fundamental distinction lies between a delegation of power to make the law, which involves a discretion of what the law shall be, and conferring an authority or discretion as to its execution to be exercised under and in pursuance of the law. The first cannot be done; the latter is unobjectionable." (Emphasis supplied.)

*Hyman A. Pressman et al. v. Barnes,* 209 Md. 544, 121 Atl. (2d) 816, is authority for the same principle, as will appear from the following passage:

"It is a fundamental principle that, except when authorized by the Constitution, the Legislature cannot delegate the power to make laws to any other authority. As the lawmaking function, under the doctrine of separation of powers, is assigned exclusively to the Legislature, *any attempt to abdicate it in any particular field is unconstitutional. This principle is not violated, however, where a municipal corporation is vested with powers of legislation as to matters of local concern.*" (Emphasis supplied.)

A clear statement of the principle of non-delegable authority is made in *Brawner v. Curran,* 141 Md. 586, 119 Atl. 250:

"In dealing with the question we will exclude from consideration all cases involving only the right of a Legislature to refer to the people of a designated municipal or quasi municipal corporation or to the people of a specified and described community the question as to whether local legislation affecting only that locality shall become effective, because, while the power of the Legislature *to refer local legislation affecting it alone* to the people of such a corporation or of some political subdivision of the state, or of some defined locality, cannot be questioned in this state. (Levering v. Supervisors of Election, 137 Md. 287, 112 Atl. 301), and is sustained by the weight of authority elsewhere (12 C.J.

50

857, notes 92, 93), *it is equally well settled that the reasons given in those decisions upon which they rest are not applicable to legislation affecting the whole state* (12 C.J. 841; 6 R.C.L. p. 166).

"The reason usually given in cases which support the right of the Legislature to refer local legislation to the people of the localities affected is the power which the Legislature, the lawmaking agency of the state, has over its 'derivative creations' (Oberholtzer on Referendum in America, Edition 1911), and which is unlimited except by the state and federal Constitutions. *That reason, however, has no application to a statute which affects, not a creation of the state, but the entire state and every part thereof.*

"It has been said that this distinction is arbitrary and illogical, and rests more upon political expediency than upon sound legal principles, nevertheless the final and complete answer to that position is that the question is no longer open, but has been finally settled by repeated decisions of this court and by a preponderance of authority elsewhere so great that we are constrained to accept it in connection with our own decisions as conclusive of the question.

"Coming back to the main proposition, in our judgment, the Legislature had not the power to submit the act in question to the qualified voters of the state for their approval or disapproval, and we rest our conclusion upon two grounds: (1) That, the people of Maryland having delegated to the Legislature of Maryland the power of making its laws, that body could not legally or validly redelegate the power and the authority thus conferred upon it to the people themselves; and (2) that the people of the state from whom the Legislature itself derives its powers, having prescribed in the Constitution of the state the manner in which its laws shall be enacted, it is not competent for the Legislature to prescribe any other or different way in which its laws may be enacted." (Emphasis supplied.)

From cases selected on this point I call attention to the reasoning in *Brodbine v. Inhabitants of Town of Revere,* 182 Mass. 598, 66 N.E. 607:

" * * * The respondents contend that this statute is unconstitutional, as a delegation of legislative power. It is well established in this commonwealth and elsewhere that the Legislature cannot delegate the general power to make laws, conferred upon it by a constitution like that of Massachusetts. * * * This doctrine is held by the courts almost universally. There is a well-known exception to it, resting upon conditions existing from ancient times in most of the older states of the Union, which the constitutions of the states generally recognize, namely, the existence of town or other local governmental organizations *which have always been accustomed to exercise self-government in regard to local police regulations, and other matters affecting peculiarly the interests of their own inhabitants.* On this account the determination of matters of this kind has been held to be a proper exercise of local self-government, which the Legislature may commit to a city or town. * * * It is very clear, where the people of a city or town have become so numerous that the management of their municipal affairs can be conducted conveniently only by a representative body like a city council, that municipal legislation, such as making ordinances and regulations *as to local matters* affecting the health, safety, and convenience of the people, may be intrusted to the people's chosen representatives in a city government." (Emphasis supplied.)

Our Supreme Court was thinking in the same terms when it said in *Board v. Smith,* 22 Colo. 534, 45 Pac. 356, 33 L.R.A. 465:

"This brings us to the question raised with reference to the power of the legislature to delegate to the several boards of county commissioners authority to ascertain the needs of those precincts having the requisite population. Judge Dixon was of opinion that the power con-

ferred upon the boards of county commissioners could be sustained upon either of two principles of constitutional law: First, the law being complete, its operation might be made contingent; *second, because such delegation is in the furtherance of the power of local self-government.* It will be conceded that the powers conferred upon the legislature to make laws cannot be delegated to any other body or authority, *except as the principle may be modified by the second maxim.* It is, however, not essential that the law should take effect immediately upon its leaving the hands of the legislature. Its operation may, under certain limitations, be made to depend upon a contingency. Mr. Justice Agnew, speaking for the court in Locke's Appeal, 72 Pa. St. 491, says: 'What is more common than to appoint commissioners under a law to determine things, upon the decision of which the act is to operate in one way or another? * * * Then the true distinction, I conceive, is this: *The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend.* To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be the subject of inquiry and determination outside the halls of legislation.'" (Emphasis supplied.)

See *Keefe v. People,* 37 Colo. 317, 87 Pac. 791, 8 L.R.A.N.S. 131; *Burcher v. People,* 41 Colo. 495, 93 Pac. 14, 124 Am. St. R. 143; *Casey v. People,* 139 Colo. 89, 336 P. (2d) 308.

Amazing to me is the citation of authorities in the majority opinion. A reading of this material supports my contention and does not give any aid or comfort to the majority. The citations from American Jurisprudence, Corpus Juris Secundum, and Rhyne, Municipal Law, all are to this effect: that the legislature has the power to delegate to cities authority to enact ordi-

nances on local and municipal matters and that on problems considered of a general nature or of state-wide concern the legislature of the state has sole sway and that this responsibility is insular and non-delegable.

The several sections of Article V referred to above confer upon the General Assembly of Colorado the exclusive power of enacting laws for the state. These sections provide the method for their enactment and presentation to the Governor; they are in these respects mandatory and cannot be by-passed. Non-delegable legislative power (matters of state-wide concern) must conform to these constitutional provisions.

Moreover, matters of state-wide concern made the subject of legislation must be submitted to the Governor of the state for his approval or disapproval. The responsibility of the legislature to present enactments, and the responsibility of the Governor to approve or disapprove cannot be avoided by indirection — by delegating to cities power to enact ordinances on matters of state-wide concern. *Brawner v. Curran,* supra.

What must we conclude from the cited law and authorities? I submit that the measure of home-rule legislative power is this: such city may adopt carte blanche ordinances relating to local and municipal matters by virtue of Article XX, and it is no concern of the legislature as to what local and municipal problem becomes the subject of an ordinance. What is local and municipal in nature depends upon the time and the circumstances producing the problem calling for solution by the city. Article XX vests no greater authority in the city than the ultimate of what the legislature could have conferred by charter upon it in regard to local and municipal concerns if it were a conventional, non-home-rule city.

Article XX only changed the law in one respect: it took away from the legislature the power to bestow authority upon home-rule cities to enact ordinances on such purely local and municipal matters as the legis-

lature's discretion dictated; now such cities have authority to legislate on any local and municipal problem by virtue of the Article, and the initial determination of what is local and municipal rests with the city.

To sanction a legislative delegation to home-rule cities (or, for that matter, to non-home-rule cities) of authority to enact ordinances on matters predominantly of state-wide concern could conceivably result in a crazy-quilt of special laws covering the state. And thereby the legislature could evade through indirection the constitutional prohibition against special legislation. This is the pernicious danger that lurks in the quotations taken from the majority opinion.

Article V, Section 25, of the Constitution provides in part that "The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * In all other cases, where a general law can be made applicable, no special law shall be enacted."

Assume the legislature delegated to all home-rule cities of the state power to enact ordinances on a matter of predominantly state-wide concern. Pursuant to this authority Denver adopted an ordinance defining the offense and providing for a punishment of 30 days imprisonment; Fort Collins adopted a somewhat different ordinance and provided for a punishment of 60 days imprisonment; Colorado Springs decided not to act under the delegation; and Grand Junction, dissatisfied with the wording and penalty of the other municipalities, passed its notion of a proper ordinance. On a matter of state-wide concern we would have three different laws and in one city no law at all. And we would have to consider the ordinances of such other cities as acted under the delegated power. Could there be a more chaotic situation on a state-wide problem?

By such a system we would not have the uniformity. in the application of the law on a matter of general concern which is essential to an ordered society. And, after

all, that is the primary purpose of the constitutional provision denouncing local or special legislation. "It is well settled that a law is not local or special when it is general and uniform in its operation upon all in like situation." *People v. Earl,* 42 Colo. 238, 94 Pac. 294.

There is a tone and content in the majority opinion that indicates a retrogression to principles enunciated prior to our decision in the case of *Canon City v. Merris,* supra. We are returning to concurrency of jurisdiction instead of giving recognition to the exclusiveness of the authority of a home-rule city in affairs purely local and municipal, and to the exclusiveness of the authority of the state in concerns which are general and of state-wide significance. And we are reverting to the rule of expediency, strongly condemned in the Merris case, when we espouse a doctrine "as a sensible approach to the solution of the continuing conflicts between state and municipal laws."

Licensing of motor vehicles is a matter of state-wide concern, and could have been so determined, and the language which I deem offensive to constitutional law, not necessary to this result, deleted.

MR. JUSTICE HALL joins in this opinion.