THESE parties are hereinafter referred to as the city and Henry respectively.
In a collision between a city truck and Henry's automobile in which Henry's wife was a passenger, the latter was killed. Herein Henry sued the city for damages and on a verdict in his favor for $3,000 judgment was entered. To review that judgment the city prosecutes this writ. and asks that it be made a supersedeas. Both parties request final disposition of this case on this application, and since the question is of importance to the public, and particularly to the courts in a trial of similar cases, we comply with that request. This cause is the first coming to this court which raises the particular question involved, and it was not at issue here until September 20, 1934.
The accident involved occurred at the intersection of three streets in the city of Denver. As one of its defenses the city alleged that the accident and injury were contributed to and caused by the negligence of Henry, "that, among other things, said negligence consisted in the failure of the plaintiff to yield the right of way to the truck driven by an employee of the defendant, which said truck entered the intersection, described in the complaint, before the automobile driven by plaintiff entered the intersection; that plaintiff failed to grant the right of way to defendant's truck, as provided by the laws of the State of Colorado"; Henry's motion to strike the quoted portion of the city's answer was sustained and the correctness of that ruling is the only question presented and *Page 584 
argued. The motion was sustained on the theory that the right of way was governed by city ordinance, not by statute.
The statute in question provides: "The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection. When two vehicles enter an intersection at the same time, the driver of the vehicle on the left shall yield to the driver on the right." S. L. 1931, p. 539, c. 122, § 87.
After the passage of that statute the city enacted the following ordinance: "Every driver of a vehicle approaching an intersection of a street shall yield the right of way at such intersection to any vehicle approaching from the right." Sec. 65, Ordinance 16, Series of 1932. If the ordinance controlled here the ruling complained of was right and the judgment must be affirmed. If the statute controlled the judgment must be reversed.
Denver is a "Home Rule" city, organized under article XX of the state Constitution, and section 6 of that article is applicable to it. Said section 6 vests in the city all powers "necessary, requisite or proper for the government and administration of its local and municipal matters," "the full right of self-government in both local and municipal matters," and further provides that statutes applicable shall continue in effect "except in so far as superseded" by charter or ordinance. Hence the question here is, "Is the control of traffic at street intersections in the city of Denver a local or municipal matter?"
The principal authorities relied upon by the city to support its present position are: Armstrong v. JohnsonCo., 84 Colo. 142, 268 Pac. 978; People v. Denver, 90 Colo. 598,10 P.2d 1106; Helmer v. Superior Court,48 Cal. App. 140, 191 Pac. 1001; Ex Parte Daniels, 183 Cal. 636,192 Pac. 442.
[1, 2] In Armstrong v. Johnson Co., we held that the streets of Denver are "highways of the state" to the extent of bringing Johnson within that phrase as used in a statute imposing a license fee for the operation of trucks for hire. In People v. Denver we held that the streets of *Page 585 
Denver are such public highways as to make the city liable for a state gasoline tax imposed under a statute providing that it should be paid by "every person who shall use in this state for propelling a motor vehicle on the public streets or highways any motor fuel," etc. In each of these cases the question was one of taxation, not the exercise of police power, and the legislative intent to include the city was clear. The language used in those opinions must be confined to the questions presented and so confined does not help us here. That city streets are state highways for the purpose of enabling the state to levy taxes on vehicles and their motive power used thereon is no proof that they are such state highways as preclude the city, in the exercise of its police power, from regulating traffic thereon. In the Helmer case defendant was charged with drunken driving in the city of Sacramento in violation of a state statute making the offense a felony. A city ordinance, which he contended controlled, made the offense a misdemeanor. He sought prohibition to prevent trial. The District Court of Appeals held the ordinance inapplicable because the offense was not a "municipal affair" saying that modern conditions had made the handling of automobile traffic "a matter of the gravest concern to the people of the entire state." But the court further rested its conclusion on the right of the state to enact criminal statutes applicable to city streets. This is sound, but some of the language used to support it greatly weakens the court's first conclusion. Confining the court's language to the question before it nothing more is decided than that the protection of the public from a drunken driver was not a matter "of purely municipal concern." In the Daniels case defendant was convicted of violating a speed ordinance of Pasadena and was discharged on habeas corpus because "the regulation of traffic upon the streets of a city is not one of those municipal affairs in which by the constitution chartered cities are given a power superior to that of the state legislature, but that such power is subject to the general laws of the state, and ordinances inconsistent therewith *Page 586 
are invalid." The court held the ordinance invalid under section 11, article XI of the California Constitution because in conflict with the statute. That section of the Constitution authorizes municipalities to make and enforce "such local, police, sanitary, and other regulations as are not in conflict with general laws." Article XX of our Constitution contains no such limitation.
We have heretofore called attention to the fact that "authorities from other states aid but little in ascertaining the intent and purpose of the article (said article XX) in question." Because "It has no counterpart in the constitutions of other states." What power is granted by it has however been fairly well settled by our decisions. It is "Every power possessed by the legislature in the making of a charter for Denver." Denver v. Hallett,34 Colo. 393, 83 Pac. 1066. It is determined "by ascertaining whether the legislature in the absence of article XX could have conferred upon the municipality the power in question." Londoner v. Denver, 52 Colo. 15,119 Pac. 156; Denver v. Mountain States T. T. Co.,67 Colo. 225, 184 Pac. 604.
Prior to the adoption of article XX the legislature did invest municipalities with control of vehicular traffic. C. L. 1921, p. 2290, § 8987, par. 7. Since the adoption of the article we have said that the city, under its charter, "undoubtedly * * * has the power to reasonably regulate vehicular traffic." Staley v. Vaughn, 92 Colo. 6,17 P.2d 299. And as disclosed by its charter and ordinance it has continued so to act.
[3] If the city had power, prior to the enactment of the statute, to pass such an ordinance as that here in question, it had that power by virtue of the Constitution, and the statute could not take it away. If the statute, instead of assuming to regulate the right of way at all highway intersections, had pretended to authorize Home Rule cities to do so within their boundaries, could there be any doubt of the validity of an ordinance passed under that statute? Yet the source of authority for the passage *Page 587 
of the ordinance is the Constitution and the city's charter, not a legislative grant.
[4] Considering this question as a practical one, which after all is the best test, there seems no escape from the conclusion that the regulation of traffic at street intersections in the city of Denver is primarily a matter of local concern because proper regulation is almost wholly dependent upon local conditions. It may be easy on country roads, or in small towns, to determine which car first enters an intersection, but the impossibility of so doing at the most congested intersections in the city of Denver, during the hours of heaviest traffic, is clearly apparent to anyone who will stand at one of these corners and use his eyes. A driver there can readily determine who is on his right hand and hence entitled to precede him. But to watch both sides under such circumstances, and particularly to get the necessary mental picture of countless cars coming from four directions and determine with any degree of certainty which has first entered the intersection is beyond human capacity. All men know this and we take judicial knowledge of what all men know.
The argument based upon the simplicity of traffic regulations in "horse and buggy days" as compared with the complication of such regulation and its statewide importance in "automobile days" loses its persuasive power when faced with the facts. This statute was not passed until 1931, whereas article XX of the Constitution was adopted in 1902 and section 6 thereof as it now stands, in 1912.
So for almost thirty years Denver had been a Home Rule city, for almost twenty years said section 6 of article XX had been applicable to it, and for at least fifteen years the regulation of automobile traffic had been a great and growing problem, neither more nor less a matter of local or general concern than in 1932. Yet during all those years such traffic in the city was controlled by the municipality through charter and ordinance *Page 588 
adopted in the exercise of the powers granted by said article XX.
In addition to the foregoing our conclusion is supported by Kalich v. Knapp, 73 Ore. 558, 142 Pac. 594, 145 Pac. 22. There the trial court held that a speed ordinance of the city of Portland had been superseded by a general statute. The judgment was reversed on the ground that the motor vehicle act, so far as it attempted to supplant the ordinance, was unconstitutional as in violation of section 2, article XI of the Constitution of that state which provided: "The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the state of Oregon." This had been construed as a grant of supreme power "in relation to matters purely local" although apparently not a grant of all powers which the legislature might confer. Thurber v.McMinnville, 63 Ore. 410, 128 Pac. 43. It should therefore be said that this was a broader grant of power than that contained in the Constitution of California but narrower than that contained in article XX of the Constitution of Colorado.
It is said the Kalich case has been overruled by Lovejoyv. Portland, 95 Ore. 459, 188 Pac. 207, and Rose v.Port of Portland, 82 Ore. 541, 162 Pac. 498. The first involved the right of the city to tax an insurance agent and the second the right of a port to improve a slough. In neither is the Kalich case specifically overruled and on the point here involved it seems to us untouched. Lidforsv. Pflaum, 115 Ore. 142, 236 Pac. 1059, while containing some pertinent expressions need not be examined. What was there said on the subject was clearly dictum, was contrary to the Kalich case, and that portion of the opinion cites no authority.
Our conclusion is that the right of way at street intersections in the city of Denver is controlled by the ordinance in question, not by the statute.
The judgment is accordingly affirmed. *Page 589 
MR. CHIEF JUSTICE ADAMS, MR. JUSTICE HILLIARD and MR. JUSTICE HOLLAND concur.
MR. JUSTICE BUTLER, MR. JUSTICE CAMPBELL and MR. JUSTICE BOUCK dissent.