No. 19,067.

City and County of Denver *v.* Joseph P. Pike.
(342 P. [2] 688)

Decided July 20, 1959.

18

Mr. JOHN C. BANKS, Mr. A. L. HERRMANN, JR., for plaintiff in error.

Mr. STANLEY L. DREXLER, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error, City and County of Denver, seeks reversal of a judgment of the Superior Court of the City and County of Denver dismissing a charge against the defendant in error, defendant in the Superior Court, for violating a speeding ordinance. The statutory references appearing herein refer to chapter, article and section of the Colorado Revised Statutes of 1953. The dismissal was based upon the conclusion of the Superior Court that Denver lacked jurisdiction to enforce traffic

ordinances on the Valley Highway without first obtaining approval of its ordinances from the State Department of Highways. The case is presented here on an agreed Statement of Facts which provides in part as follows:

" * * * The defendant, Joseph P. Pike, was charged in the Municipal Court of the City and County of Denver with violation of Section 511.3 of the Revised Muncipal Code of the City and County of Denver and more particularly with speeding on a portion of the Valley Highway lying within the City and County of Denver on March 14, 1959, at a rate of 62 miles per hour in a zone where the maximum speed limit was 50 miles per hour. The defendant entered a plea of not guilty and was tried, found guilty and fined $12.00 plus $5.00 costs.

"The defendant perfected an appeal to the Superior Court and filed therein his motion to dismiss on the ground that the alleged offense took place on a state highway over which the City and County of Denver had no jurisdiction, namely, the Valley Highway at the Broadway Viaduct.

* * *

"After hearing the argument of counsel, the Superior Court granted the defendant's motion to dismiss and entered a minute order dismissing the case, * * *

"Pursuant to the said minute order, judgment was entered by the clerk dismissing the said action against the defendant, Joseph P. Pike. * * * "

The Valley Highway is a multiple lane, limited access highway which traverses Denver from its northern boundary to an area close to its southern limits. It is also a connecting link in the state highway No. 185. It has been declared by the State Highway Department to be a freeway pursuant to 120-6-1. It has ingress and egress outlets in the form of ramps and clover leaves, and is equipped with service roads. All intersections as they are commonly known have been eliminated. This highway not only serves state highway 185 as a connect-

ing link, but it also carries a great volume of intra-city traffic and connects, as well, with federal highways.

The rights-of-way were largely obtained by the City and County of Denver, but in part were secured by the State Highway Commission of Colorado. Ultimately, under agreements which have been signed by the City of Denver and the State Highway Commissioner, title to all of the land will be conveyed to the State of Colorado.

An agreement was entered into in 1947 between the City and the State Highway Engineer establishing the Valley Highway as a freeway and fixing the general location of it. This contract recited that the Valley Highway was being constructed with funds supplied by the United States of America and the State of Colorado and the right-of-way and access rights were to be obtained by the City and County of Denver. This agreement detailed the obligations of the City and those of the State relative to the construction of this highway, including the closing of streets, clearing of rights-of-way and access rights and, in addition, paragraph 4 provides as follows:

"4. No maximum speed limit of less than 50 miles per hour shall be prescribed by the City for travel on the arterial lanes of the highway, without written consent of the Engineer. Any parking regulations along the Valley Highway or on its right of way, shall be approved in writing by the Engineer before being placed in effect by the City."

The duty of maintenance of the completed highway, including policing and lighting, was placed on the City and it provided that neither signs nor signals were to be erected by the City without the approval of the highway engineer.

A supplemental agreement was executed in 1955 which modified the original agreement in respects which are not here material but which repeated the quoted provision relative to speed limits.

It is to be noted that the State Highway Engineer is

authorized by statute enacted in 1947, 120-7-2 (an act pertaining to long range highway program), to enter into such an agreement. Likewise, the City was, by Ordinance No. 93, Series of 1947, also authorized to become a party to the specific contract which was executed. This ordinance recited and approved the provisions contained in the agreement and specifically authorized the Mayor and the Manager of Improvements to execute and the City Auditor to register and countersign it on behalf of the City. Noteworthy also is the fact that Section 6 of this ordinance specifically provided, in conformity with the agreement, that the City would not prescribe a maximum speed limit for arterial lanes (on the highway) of less than 50 miles per hour without the written approval of the State Highway Engineer.

The judgment of the Superior Court, while recognizing the right of the City generally to regulate vehicular traffic on the Valley Highway, nevertheless held that it lacked jurisdiction in this instance because of its failure to obtain express approval of its regulations as required by 120-13-35, which section declares that cities, cities and counties, etc., shall regulate and enforce traffic and parking restrictions on all highway-streets within the municipal boundaries, but provides that all regulations shall be subject to approval of the Department of Highways before becoming effective. This section also purports to divide authority over streets which are part of the state highway system. It defines in detail the obligations of cities, cities and counties and incorporated towns with respect to streets which are a part of the state highway system.

It is the contention of the City that the Superior Court erred in holding that the City of Denver does not have jurisdiction on the Valley Highway unless it first obtains approval of the State Highway Commission. It argues that the regulation of traffic is a local and municipal matter and that Denver has authority over such matters by virtue of Article XX of the Colorado Con-

stitution; that the trial court erred in holding that Denver's jurisdiction over the highway must have been authorized by some law of the state; that since Denver obtained its authority under the constitution, an act of the general assembly could not take this power away; and that any working agreement between Denver and the State Highway Department creating the Valley Highway has no bearing on the present question and could not be used as a collateral defense to an action against a speed violator. Thus the City requests that we disregard the mentioned contracts and also the statutes pertaining to said highways and to freeways and that we decide the case by reference to the Twentieth Amendment of the Constitution of Colorado and Section 6 thereof which grants to home-rule cities exclusive power over subjects which are local and municipal. If the matter is predominantly local and municipal, it is under the Twentieth Amendment exclusively so, and the State of Colorado would, under this analysis have no jurisdiction whatsoever in the premises. *City of Canon City v. Merris,* 137 Colo. 169, 323 P. (2d) 614.

The defendant argues that regulation of traffic on the Valley Highway concerns both Denver and the State of Colorado; that it is not exclusively local and municipal and that, while Denver may exercise jurisdiction on the highway, it must do so with the consent and approval of the Department of Highways of the State of Colorado.

 We cannot agree with counsel for the City that the problem is one of local and municipal concern to the exclusion of the State, and that the contracts and statute are for this reason superseded by the ordinance. Even conceding that the regulation of speed is generally a matter of local and municipal concern as indicated by our decision in *City of Canon City v. Merris,* supra, wherein it was said: .

"What is local and municipal is frequently difficult to determine. We hold that the operation of a vehicle by

one who is under the influence of intoxicating liquor is a matter of state-wide concern. Ordinarily regulation of traffic is a local and municipal matter. *People v. Graham,* 107 Colo. 202, 110 P. (2d) 256. Hence, *questions of speed,* right of way, parking, designation of one-way streets, and similar measures, all regulatory in scope, are matters of local and municipal concern. * * * " (Emphasis supplied.) We do not believe that the language there used can be applied to the present situation, which deals with a subject not involved in, or contemplated by, the decision in the *Merris case.* The opinion in that case was not intended to establish a categorical approach to determination of that which is local and municipal and that which is general and state-wide. Instead it recognized the high degree of importance of the facts and circumstances of the particular case in making the required determination.

In *People v. Graham,* 107 Colo. 202, 110 P. (2d) 256, the Court commented upon the meaning of the words "local and municipal" as follows:

" * * * The words 'local and municipal' occurring in section 6, article XX, supra, is not a fixed expression that may be eternalized. What is local, as distinguished from general and statewide, depends somewhat upon time and circumstances. *Helmer v. Superior Court,* 48 Cal. App. 140, 191 Pac. 1001. Technological and economic forces play their part in any such transition. As motor vehicle traffic in the state and between home-rule municipalities becomes more and more integrated it gradually ceases to be a 'local' matter and becomes subject to general law. That there still is a field in motor vehicle traffic regulation, local in its nature, cannot be questioned. In *Denver v. Henry,* supra, we held that traffic regulations at municipal street intersections were local, to which holding we adhere. In section 164, chapter 16, supra, legislative recognition of local motor vehicle traffic regulations is given, under certain circumstances, and there may be others. Our only concern here

is whether the offenses charged in the information involve the regulation of motor vehicle traffic, local in its nature and therefore exclusive to a home-rule city. * * * "

In view of the complexity of the circumstances surrounding the creation of the Valley Highway, the jurisdictional question should not be determined by any categorical method. Even though the field of vehicle traffic control is generally considered to be local and municipal, there are some aspects, as indicated by the *Graham case,* supra, and the *Merris case,* supra, wherein the police power of the state comes into play in order to bring about an integrated state-wide policy governing violations which have general state-wide character. As stated in the *Graham case,* conceptions as to what is local and what is state-wide are not "eternalized" but rather depend for their meaning upon time and circumstance. The Court in that case foresaw developments of the character of the Valley Highway with respect to which there exists a general interest. The State's interest stems from the fact that it is a state highway, a limited access connecting link across the city. It has an interest in maintaining it as a true artery free from speed traps and local regulations which would tend to interfere with state-wide or national travel. The City's interest arises as a result of the highway being within its boundaries and also from the fact that it provides access from one section of the city to another. It is, in other words, a city street as well as a state highway. *Denver v. Henry,* 95 Colo. 582, 593, 38 P. (2d) 895; *Armstrong v. Johnson Storage and Moving Co.,* 84 Colo. 142, 268 Pac. 978, and *People v. City and County of Denver,* 90 Colo. 598, 10 P. (2d) 1106. The City has an interest in seeing to it that regulations on this state highway recognize its character as a street of the city as well as a state highway. Great confusion would result from having two sets of laws each applicable to a segment of the streets of the city.

No doubt both parties to the 1947 agreement and to the 1955 supplement recognized the dual character of this highway and the joint interest when the agreements were executed. It was at all times contemplated by both State and City that the City would enact ordinances regulating the flow of traffic on this highway within the city's boundaries by imposing upon the City the obligation of policing the highway within the city boundaries. The State, on the other hand, was interested in maintaining minimum speeds on the highway in order to achieve its general purposes, and the speed restriction was inserted in the contract in order to achieve this end. This same provision required the City to obtain the written consent of the highway engineer in order to promulgate parking regulations. No similar written consent was required with respect to speed regulations. As to this, the sole requirement was that the City would obtain consent of the engineer if it promulgated an ordinance prescribing a maximum speed less than 50 miles per hour.

▮ As a result of our consideration of this agreement and of the authority under which it was executed, we conclude that both the City and State intended at all times that the City would regulate traffic along this highway and that as a result thereof regulations have not been imposed by the State and the City has been allowed to post the highway in accordance with its ordinance authority. We hold also that the predominant interest was that of the State and that this warranted insertion in the contracts of the 50 miles per hour limitation and the parking restrictions. It has a regulatory interest, together with an interest which arose from its monetary contributions, all of which furnish justification for the imposition of its policies.

▮ Under the circumstances here presented, formal approval of the City's regulations was unnecessary. The State had given its consent beforehand to the regulation by the City subject to the limitations set forth in the

agreement. The right of the City to regulate speed had been in fact recognized by the State by allowing the City to post the highway and enforce its ordinances. The City, acting with the consent and approval of the State, had the requisite jurisdiction in the premises and it was error for the court to dismiss the complaint.

The judgment of the Superior Court is reversed and the cause is remanded with directions to reinstate the cause and to proceed with the trial on its merits.

MR. JUSTICE FRANTZ and MR. JUSTICE HALL specially concurring, MR. JUSTICE DAY concurring in the result.

MR. JUSTICE FRANTZ specially concurring in the result:

Again I concur in the result, and for the same reasons given in *Thomas E. Davis v. City and County of Denver*, No. 18,293, and related cases, decided this day.

The premise of the majority opinion is that the Valley Highway as it wends its way through Denver is an artery of traffic retaining its status as a matter of state-wide concern; that, notwithstanding the fact that it is a matter predominantly of statewide concern, Denver could enact an ordinance regulating speed of traffic using the highway within the confines of Denver, because delegated that power by the state. According to the majority, the City, therefore, "had the requisite jurisdiction in the premises and it was error to dismiss the complaint."

Assuming the correctness of the premise that the Valley Highway was a general or statewide affair, it would then follow, in view of what I said in the Davis case, supra, that the delegation to the city was ultra vires.

However, I maintain that the question of speed on the Valley Highway is a matter of local and municipal concern, a problem with which the legislature was powerless to interfere. Integrating this highway with heavily traveled streets of Denver by ingress and egress ways, and having it routed through the heart of Denver in

highly industrialized areas where the traffic population at certain hours of the day burdens the Valley Highway almost to saturation, make it a truly local and municipal problem.

Our decision should determine this case on the basis that we are dealing with a local and municipal problem.

MR. JUSTICE HALL joins in this opinion.