The **CITY OF COMMERCE CITY**, Colorado, a Colorado municipal corporation; **Timothy J. Gagen**, as City Manager of the City of Commerce City; **The City of Westminster**, Colorado, a Colorado municipal corporation; **William M. Christopher**, as City Manager of the City of Westminster; **The City of Fort Collins**, Colorado, a Colorado municipal corporation; **John F. Fischbach**, as City Manager of the City of Fort Collins; **The City of Colorado Springs**, Colorado, a Colorado municipal corporation, Petitioners

v.

**STATE of Colorado**, a state of the United States of America; and **Bill Owens**, as Governor of the State of Colorado, Respondents.

No. 01SC281.

Supreme Court of Colorado,
En Banc.

Feb. 11, 2002.

Gehler & Merrigan, Thomas E. Merrigan, Commerce City, Colorado, Attorney for Petitioner City of Commerce City, Colorado.

Stephen J. Roy, City Attorney, Fort Collins, Colorado, Attorney for City of Fort Collins.

Martin R. McCullough, City Attorney, Jeffrey H. Cahn, Chief Prosecuting Attorney, Westminster, Municipal Court, Westminster, Colorado, Attorneys for City of Westminster.

Patricia K. Kelley, City Attorney, Lori R. Miskel, City Attorney Colorado Springs, Colorado, Attorneys for City of Colorado Springs.

John R. Duval, City Attorney, Loveland, Colorado, Special Counsel for Petitioners.

Ken Salazar, Attorney General, Robert H. Dodd, Jr., Assistant Attorney General, Attorneys for Respondents.

Geoffrey T. Wilson, Denver, Colorado, Attorney for Amicus Curiae Colorado Municipal League.

Walter W. Fricke, Boulder, Colorado, Attorney for Amicus Curiae City of Boulder.

Justice RICE delivered the Opinion of the Court.

The question raised in this appeal is whether certain provisions of section 42–4–

110.5, 11 C.R.S. (2001) and section 42–3–112(14), 11 C.R.S. (2001) regulating the manner in which cities use automated vehicle identification systems (AVIS) to enforce traffic laws unconstitutionally infringe on home-rule cities' powers under Article XX, Section 6 of the Colorado Constitution.[1]

Because we conclude that the regulation of automated vehicle identification systems to enforce traffic laws is a matter of mixed local and state concern, we hold that the challenged provisions of section 42–4–110.5 and section 42–3–112(14) are not superseded by the Petitioner-cities' local ordinances or charters. Therefore, we affirm the judgment of the trial court and uphold the constitutionality of the challenged provisions of section 42–4–110.5 and section 42–3–112(14).

## I. FACTS AND PROCEDURAL HISTORY

In this case, the cities of Commerce City, Westminster, Fort Collins, and Colorado Springs (Cities), each home-rule municipalities under Article XX of the Colorado Constitution, challenge the constitutionality of certain provisions of section 42–4–110.5 and section 42–3–112(14) regulating the use of automated vehicle identification systems, popularly known as photo radar and photo red light, in Colorado.[2]

The Cities argue that certain provisions of section 42–4–110.5 and section 42–3–112(14) unconstitutionally infringe on their home-rule powers because Article XX, Section 6 of the Colorado Constitution unambiguously reserves to the Cities the power to enforce

local traffic ordinances and operate municipal courts. The Cities do not argue that all of the restrictions placed on home-rule cities by the state legislation violate their home-rule powers, rather they challenge the following: (1) the ninety day service provision for traffic violations detected by AVIS[3]; (2) the requirement that an entity using AVIS post a sign in a conspicuous place before each area in which AVIS are used notifying the public of their use[4]; (3) the provision that an entity using AVIS mail warnings to first-time violators who have been identified by automated systems if the drivers were detected speeding at a rate less than ten miles over a reasonable speed limit[5]; (4) the provision establishing a forty-dollar maximum fine for speeding violations detected by AVIS[6]; (5) the provision establishing an eighty-dollar maximum fine for AVIS-detected speeding violations in school zones[7]; (6) the provision establishing a seventy-five dollar maximum penalty for red light violations detected by AVIS[8]; (7) the provision limiting the method by which an entity using automated systems may contract with AVIS vendors and manufacturers for the use or acquisition of AVIS equipment[9]; and (8) the prohibition against access to state records—which are needed to determine the identity and address of the registered owner of a motor vehicle involved in a violation detected by an automated system—unless the entity requesting the access complies with section 42–4–110.5.[10]

In 1996 and 1997, both prior to and after the passage of Senate Bill 97–36,[11] Commerce City, Fort Collins, and Colorado

---

1.  We granted certiorari on the following issue: Whether certain state statutes, which purport to direct, limit and control the Plaintiff Home Rule Cities' use of camera radar and red-light camera to enforce their local traffic laws in their municipal courts, are, under Article XX, Section 6, of the Colorado Constitution, superseded by Plaintiffs' local ordinances.

2.  The parties stipulated that the enforcement technology at issue in this case, camera radar systems and red-light camera systems, falls within the definition of an automated vehicle identification system, as defined by section 42–4–110.5(6), 11 C.R.S. (2001). We will refer to these technologies as "AVIS" in this opinion.

3.  § 42–4–110.5(2)(a)(II), 11 C.R.S. (2001).

4.  § 42–4–110.5(2)(d)(I), 11 C.R.S. (2001).

5.  § 42–4–110.5(4)(a), 11 C.R.S. (2001).

6.  § 42–4–110.5(4)(b)(I), 11 C.R.S. (2001).

7.  § 42–4–110.5(4)(b)(II), 11 C.R.S. (2001).

8.  § 42–4–110.5(4.5), 11 C.R.S. (2001).

9.  § 42–4–110.5(5), 11 C.R.S. (2001).

10.  § 42–3–112(14)(a),(b), 11 C.R.S. (2001).

11.  Senate Bill 97–36 was codified at section 42–4–110.5, 11 C.R.S. (2001).

Springs adopted ordinances authorizing the use of AVIS within their city limits.[12] Westminster, which had begun initial contractual negotiations with an AVIS provider, opted not to finalize its contract because of the uncertainty as to whether the state statute would apply to it as a home-rule city. Only Fort Collins and Commerce City actually implemented AVIS.

Prior to the General Assembly's regulation of AVIS, little uniformity existed in the way Commerce City and Fort Collins implemented their respective systems. For example, while Fort Collins generally notified drivers of the city's use of AVIS by placing appropriate signs at its city entrances, it did not post notification signs at AVIS locations themselves. Commerce City, on the other hand, posted signs about 200 feet before the AVIS units. Moreover, while Fort Collins stationed an officer with the automated-system unit during use, Commerce City did not do so. In fact, in Commerce City, the AVIS vendor, a private corporation, positioned the unit at the field location, and a police officer would only occasionally check to assure it was in the correct location. In addition, while Fort Collins used automated systems on state highways within its city limits about 20% of the time, it primarily used them on local streets. Commerce City, however, used AVIS exclusively on state highways within its borders, and never on its local streets. Moreover, in Commerce City, approximately 90% of AVIS citations were issued to non-residents while in Fort Collins about 43% of AVIS citations were issued to non-residents.

Furthermore, Fort Collins and Commerce City paid their AVIS vendors based on a percentage of the fine collected and neither city's law enforcement agency directly issued AVIS citations. Rather, a private, out-of-state corporation decided whether to issue a citation based on considerations such as the clarity of the driver's photograph, whether the gender of the driver in the photograph matched the registered owner of the vehicle, and whether the license number could be clearly read. After making a decision, the corporation itself, rather than the police, directly issued the automated-system citations. In addition, the AVIS vendor did not initially include a copy of the photograph with the summons that was mailed to the vehicle's registered owner; rather the AVIS vendor mailed photographs to the municipal courts to be held there. Thus, drivers ticketed by automated systems were required to go to the municipal court to view a photograph to determine whether the picture accurately identified the driver charged.

In 1997 and 1999, in response to concern about the use of AVIS within Colorado and with the belief that "the use of automated vehicle identification systems ... is a matter of statewide concern" which calls for "uniform state standards," § 42–4–110.5(1), the Colorado General Assembly passed Senate Bill 97–36 and House Bill 99–1364, which were codified at section 42–4–110.5 and section 42–3–112(14). These statutes established uniform regulations for the use of AVIS in Colorado.

Thereafter, the Cities filed a complaint in district court challenging the constitutionality of the state legislation, and the parties filed cross-motions for summary judgment. The Cities argued that certain subsections of section 42–4–110.5 and section 42–4–112(14) impermissibly infringe on their home-rule powers under Article XX, Section 6 of the Colorado Constitution.[13] Specifically, the

---

12. Specifically, in 1996, Commerce City and Fort Collins adopted ordinances authorizing the use of camera radar to detect and enforce speeding violations and the use of red-light cameras to detect and enforce red-light violations within each city's limits. In September 1997, three months after the passage of Senate Bill 36, Colorado Springs adopted an ordinance authorizing the use of red-light cameras to enforce red-light violations.

13. The Cities also argued that the personal service requirement of section 42–4–110.5(2)(a)(I)(A), 11 C.R.S. (2001) violates the authority granted to the judiciary by Article VI, Section 21 of the Colorado Constitution as well as the separation of powers principles of Article III because the service provision is in direct conflict with Rule 204(e) of the Colorado Municipal Court Rules of Procedure. The trial court agreed, holding that section 42–4–110.5(2)(a)(I)(A) unconstitutionally encroaches on the exclusive powers of this court and violates the separation of powers doctrine. The State did not appeal this issue.

Although the Cities also challenged the constitutionality of section 42–4–110.5(2)(a)(I)(B), 11

Cities argued that the enforcement of traffic laws regulating speeding and red lights is strictly a matter of local interest. Thus, since the state statutes conflict with the Cities' municipal ordinances regulating AVIS, the state legislation is superseded by the local charters and ordinances pursuant to Article XX, Section 6 of the Colorado Constitution, which grants municipalities home-rule powers.

The State argued that the use of AVIS in Colorado is a matter of statewide concern (or at least a matter of mixed state and local interest), and therefore the state legislation regulating these enforcement technologies supersedes conflicting local ordinances.

The trial court held that the use of "photo radar" is one of mixed statewide and local interest. The trial court, noting that there is no " 'litmus-like indicator for resolving whether a matter is of local, statewide or mixed concern,' " (R. at v. III, p. 582) (quoting *Nat'l Adver. Co. v. Dep't of Highways*, 751 P.2d 632, 635 (Colo.1988)), applied the four factors we set out in *Voss v. Lundvall Bros., Inc.*, 830 P.2d 1061, 1067 (Colo.1992) to determine whether the statutes at issue in this case violated the Cities' home-rule powers. First, the court concluded that-consistent with the General Assembly's declaration that the regulation of AVIS implicates the state interest in uniformity-the Cities' varied implementation of AVIS confused drivers and highlighted the state interest in "protecting the rights of Colorado drivers by establishing some basic uniformity in the manner that photo radar systems are operated." (R. at v. III, p. 584.) Second, the court noted the extraterritorial impact on state citizens. Third, the court concluded that although the enforcement of traffic regulations on local streets has traditionally been characterized as a matter of local interest, "photo technology is an extremely novel method of law enforcement," which differs significantly from traditional enforcement methods and has little to do with "local weather, geography, and road conditions." (R. at v. III, p. 586.) Thus, the use of this technology has not historically been a matter of purely local concern. Finally, the court analyzed whether the constitution specifically commits the regulation of photo radar to the Cities. It concluded that the Cities' right to impose and enforce fines for the violation of municipal ordinances—a right committed to local power by the constitution—includes the right to set and enforce traffic rules on local roads. Moreover, it decided that this right is implicated by the statutory provisions at issue. Therefore, reasoning that the balance of factors supported its finding that the use of photo radar is one of mixed concern, the

---

C.R.S. (2001), the trial court did not specifically address the constitutionality of that section. Section 42–4–110.5(2)(a)(I)(B) provides:

> Nothing in this section may be deemed to prevent the state, a county, a city and county, or a municipality from sending by certified mail a written *notice*, that shall include a copy of the photograph or image of the driver, to the defendant advising the defendant of the alleged violation and permitting the defendant to waive such service of process. Any such notice shall contain on the top of the first page of the notice in fourteen-point type or larger the following statement:
> "Under Colorado law you may have certain rights concerning this violation, including the right not to pay any fine until a citation has been personally served upon you by a certified peace officer."

§ 42–4–110.5(2)(a)(I)(B) (emphasis added).

This notice section allows a state, county, city and county, or municipality to send a written notice by certified mail to the defendant, permitting him to waive "such service of process." The section states that the notice must contain a copy of the photograph or image of the driver with a notice, in fourteen point type, that the defendant "may have certain rights ... including the right not to pay any fine until a citation has been personally served upon you by a certified peace officer." Thus, among other things, section 42–4–110.5(2)(a)(I)(B) requires that if an entity decides to send a notice to a defendant in order to give the defendant the option of waiving the personal service of process requirement found in section 42–4–110.5(2)(a)(I)(A), that notice must inform the defendant that he may have certain rights, including the right to personal service of the complaint pursuant to section 42–4–110.5.(2)(a)(I)(A). However, the trial court struck down the requirement in section 42–4–110.5(2)(a)(I)(A) that "a penalty assessment notice or summons and complaint" be "personally served" by a level I or level Ia peace officer or by a deputy sheriff of a city and county. Therefore, by striking down section 42–4–110.5(2)(a)(I)(A), the trial court necessarily rendered moot section 42–4–110.5(2)(a)(I)(B). Accordingly, we do not address the constitutionality of the service requirement of 42–4–110.5(2)(a)(I)(A) or of the notice provision of section 42–4–110.5(2)(a)(I)(B).

court ruled that section 42–4–110.5 is not superseded by municipal home-rule powers under Article XX, Section 6 of the Colorado Constitution.[14] The Cities sought certiorari review pursuant to C.A.R. 50. We affirm.

## II. ANALYSIS

To determine whether the Cities' ordinances and charters supersede state legislation regulating AVIS we must answer two basic questions. First, is the enforcement of traffic laws by automated systems a matter of local, state, or mixed local and statewide concern. Second, if the matter is one of local or mixed concern, do the state statutes conflict with the Cities' local ordinances or charters. If a home-rule ordinance or charter conflicts with a state statute in a matter of local concern, the home-rule provision supersedes the state legislation. Conversely, if a home-rule ordinance or charter conflicts with a state statute in a matter of mixed concern, the state statute supersedes the home-rule provision.

To answer these two questions, we will first outline well-established Colorado law governing our municipal home-rule and preemption analysis. Next, we will apply this law to determine whether the matter is one of local, state, or mixed concern. And, finally, because we conclude that the regulation of AVIS is a matter of mixed concern, we will analyze whether a conflict exists between the challenged subsections of section 42–4–110.5 and section 42–3–112(14) and the Cities' local ordinances or charters.

### A. Home–Rule Cities and the Nature of the Interest at Stake

Commerce City, Westminster, Fort Collins, and Colorado Springs are each home-rule cities existing pursuant to Article XX of the Colorado Constitution. Section 6 of Article XX, adopted by Colorado voters in 1912, granted home-rule powers to municipalities operating under its provisions, thereby alter-

ing the basic relationship between such municipalities and the state. *City & County of Denver v. State*, 788 P.2d 764, 766 (Colo. 1990). As home-rule municipalities, the Cities have plenary authority to regulate matters of local concern. Colo. Const. art. XX, § 6; *City & County of Denver v. Qwest*, 18 P.3d 748, 754 (Colo.2001). Thus, the amendment granted power over local affairs within the respective home-rule cities—previously held by the state legislature—to home-rule municipalities themselves. *Fraternal Order of Police v. City & County of Denver*, 926 P.2d 582, 587 (Colo.1996).

We have previously recognized three categories of regulatory matters: (1) matters of local concern; (2) matters of statewide concern; and (3) matters of mixed state and local concern. *City & County of Denver v. State*, 788 P.2d at 767. Both home-rule cities and the state may legislate in areas of local concern; however, if a home-rule ordinance or charter conflicts with a state statute regulating a local matter, the home-rule provision supersedes the conflicting state provision. *Qwest*, 18 P.3d at 754; *City & County of Denver v. State*, 788 P.2d at 767. Conversely, with regard to matters of statewide concern, the state legislature has supreme authority and home-rule cities have no power to act unless authorized by the constitution or by state statute. *Qwest*, 18 P.3d at 754. Finally, in matters of mixed state and local concern, both home-rule cities and the state legislature may adopt legislation; however, in the event of a conflict between the two, the state statute supersedes a conflicting provision of the home-rule charter or ordinance. *Id.*

Thus, the constitutionality of the challenged provisions of section 42–4–110.5 and section 42–3–112(14) depends on whether the enforcement of traffic violations using automated systems is a local, statewide, or mixed issue. Moreover, whether a particular subject matter is one of state, local, or mixed

---

14. The court also ruled that section 42–3–112(14) does not violate the due process or equal protection rights of municipalities under the Colorado Constitution. (R. at v. III, pp. 591–92.) On appeal, the Cities do not argue that section 42–3–112(14) violates their due process or equal pro-

tection rights, rather they argue that the state may not deny them access to records that are necessary to effectuate their home-rule powers to enforce traffic through the use of AVIS. Accordingly, we do not address due process or equal protections arguments.

concern is a legal issue, requiring a court to consider the totality of the circumstances in making its conclusion. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 37 (2000). Therefore, we conduct a de novo review. *Id.*

■ We also recognize that although these categories may be useful in resolving conflicts between local and state legislation, they should not be mistaken for "mutually exclusive or factually perfect descriptions of the relevant interests of the state and local governments." *City & County of Denver v. State,* 788 P.2d at 767. Rather, affairs that are of primarily local, state, or mixed concern often "imperceptibly merge." *Id.* Thus, we have not developed a specific test for courts to resolve whether a matter is one of local, state, or mixed concern; rather, we have made this determination on an ad hoc basis.[15] *Id.*

■ However, we have found several general factors to be helpful. These include: (1) the need for statewide uniformity of regulation; (2) the impact of municipal regulation on persons living outside the municipal limits; (3) historical considerations, specifically whether the matter is one traditionally governed by state or by local government; and (4) whether the Colorado Constitution specifically commits the matter to state or local regulation. *Telluride,* 3 P.3d at 37; *City & County of Denver v. State* 788 P.2d at 768–69. These factors should assist the court in weighing the importance of the state interests with the importance of the local interests in order to make the legal conclusion as to which law should prevail. *Telluride,* 3 P.3d at 37.

■ Thus, applying these principles to this case, we must first determine whether the regulation of AVIS is of local, state, or mixed state and local concern. We note that the General Assembly has declared, "[T]he enforcement of traffic laws through the use of automated vehicle identification systems under this section is a matter of statewide concern and is an area in which uniform state standards are necessary." § 42–4–110.5(1), 11 C.R.S. (2001). In assessing the relative interests of the state and home-rule cities, a declaration by the General Assembly that a matter is one of statewide concern is relevant, but not determinative. *Qwest,* 18 P.3d at 755.

### 1. Uniformity

We first analyze whether a statewide interest in the uniform regulation of AVIS exists. The Cities argue that the fact that photo radar and photo red light systems are new technologies, which may be implemented differently by particular cities and which theoretically may affect drivers' expectations about being ticketed for traffic violations, does not support the need for uniformity. They point out that law enforcement has implemented new technologies in the past—such as traditional handheld radar—and the courts have adequately fashioned standards for the use of these technologies. Thus, they argue that uniformity alone does not support a finding that the state has an interest in the matter.

■ The Cities are correct that uniformity in and of itself is not a virtue, nevertheless, " 'in the appropriate case the need for uniformity in the operation of the law may be a sufficient basis for [state] legislative preemption.' " *City & County of Denver v. State,* 788 P.2d at 769 (quoting *State ex rel. Heinig v. City of Milwaukie,* 231 Or. 473, 373 P.2d 680, 684 (1962)). In this case, in addition to the clear legislative declaration that the enforcement of traffic laws through the use of AVIS is a matter of statewide concern, the undisputed facts and the substantially different nature of this enforcement technology evidences a clear need for uniform standards.

In *Qwest,* we recognized that "advances in technology ... have greatly increased the need for uniformity of [telecommunications] regulation." *Qwest,* 18 P.3d at 755. Thus,

---

**15.** Moreover, a particular matter may be one of mixed concern even if a home-rule city has considerable local interests at stake if "sufficient state interests are also implicated." *Telluride,* 3 P.3d at 37. This does not mean, however, that every time the state is able to suggest a "plausible interest" in regulating a matter to the exclusion of home-rule cities that it should be characterized as one of mixed concern. *City & County of Denver v. State,* 788 P.2d at 767.

we upheld state legislation—against Denver's argument that it thwarted its home-rule police powers—that granted telecommunications providers a right to occupy public rights-of-way without additional authorization or a franchise from local municipalities. *Id.* at 752, 755, 758.

As in *Qwest,* we again recognize that advances in technology, which have significantly changed the nature of the enforcement of traffic laws, increase the need for uniformity of AVIS regulation. In fact, the use of automated systems for traffic control represents such a considerable shift in traffic enforcement that these systems alter Colorado citizens' basic expectations about how they will be ticketed for traffic violations. Before the use of automated systems, drivers who violated traffic laws expected to be stopped and issued a citation at the time of the violation or immediately following it. This served the important purpose of notifying the driver of an alleged violation. In contrast, when cited by an automated system, drivers will not be on immediate notice of an alleged violation. Thus, this new technology significantly alters Colorado drivers' expectations about how traffic violations will be enforced against them. Accordingly, the state has an interest in providing Colorado drivers with uniform AVIS regulations.

In addition, we recognize that changing conditions may affect the analysis of whether an issue is one of local, state, or mixed concern. Our reasoning in *People v. Graham,* 107 Colo. 202, 110 P.2d 256 (1941) supports our conclusion that the state's interest in uniformity is buttressed by the reality of Colorado's complex system of roads and highways. In *Graham,* we ruled:

> The words "local and municipal" occurring in the [home-rule amendment] is not a fixed expression that may be eternalized. What is local, as distinguished from general and statewide, depends somewhat upon time and circumstances. Technological and economic forces play their part in any such transition. As motor vehicle traffic in the state and between home-rule municipalities becomes more and more integrated

it gradually ceases to be a "local" matter and becomes subject to general law.

*Graham,* 107 Colo. at 205, 110 P.2d at 257.

Here, the Cities admit that the road system within each of their city limits is a mix of local and state roads and highways. In fact, given the nature of the Front Range and Denver Metropolitan areas, a driver could pass through multiple jurisdictions in a simple daily commute to work. Without uniform state legislation, Colorado drivers may be subject to a significant variety of conflicting local legislation, further increasing the potential for confusion and substantially affecting their expectations. Indeed, Fort Collins's and Commerce City's different implementation of automated systems illustrates the potential for a myriad of regulations across the state. The state legislation works to protect Colorado citizens' interests by providing basic standards that cities using AVIS must follow. Thus, the legislation establishes a degree of uniformity—providing baseline regulations for those drivers ticketed under automated systems—and allows Colorado citizens to develop uniform expectations about the use of automated systems.

Also important to our uniformity analysis is the fact that cities wishing to ticket traffic violators using automated systems must access those drivers' names and addresses through the state motor vehicle registration office. Thus, a certain level of cooperation between a city and the state is necessary to make the system work. We have found the need for cooperation between cities and the state an important factor in our analysis. *Cf. City & County of Denver v. State,* 788 P.2d at 768. ("[W]here not only uniformity is necessary, but cooperation among governmental units, as well, and where action of state and county officials within the limits of the city is imperative to effectuate adequate protection outside the city, the matter will in all likelihood be considered a state concern." (quoting 1 Chester James Antieau, Municipal Corporation Law § 3.40 at 3–119 to 3–120 (1989))).

**2. Extraterritorial Impact: The Impact of Municipal Regulation on Persons Living Outside the Municipal Limits**

The Cities argue that the proper test for whether a municipal law has an extraterrito-

rial effect is whether the law affects non-residents in the communities where they reside-that is whether the law has a "ripple" effect on communities around the state. The test is not, the Cities contend, whether non-residents will be affected by the Cities' laws when they subject themselves to local jurisdictions by driving through them. We refuse to read this factor in our analysis so narrowly.

We have defined extraterritorial impacts as "those involving the expectations of state residents." *Walgreen v. Charnes*, 819 P.2d 1039, 1047 (Colo.1991); *accord Fraternal Order of Police*, 926 P.2d at 590. Moreover, we have said that municipal laws that impact "persons living outside the municipal limits" are relevant to the analysis of whether a matter is one of statewide concern, *City & County of Denver v. State*, 788 P.2d at 768, as are "those things which are of significant interest to people living outside the home rule municipality." *Id.* (citing Howard Klemme, *The Powers of Home Rule Cities in Colorado*, 36 U. Colo. L.Rev. 321, 342 (1964)).

The undisputed facts show that the use of automated enforcement technology by the Cities has a significant impact on Colorado residents living outside the Cities and directly implicates the expectations of Colorado citizens. Although only two of the four cities used AVIS before the General Assembly passed section 42–4–110.5, these cities' statistical data demonstrate the effect on persons living outside the municipalities. In Commerce City, approximately 90% of citations issued pursuant to an automated system were dispensed to non-residents in 1996 and 1997. Fort Collins reported that about 41% of traffic citations issued using automated systems were given to non-residents.

The fact that about 90% of tickets in Commerce City were issued to non-residents distinctively demonstrates the effect of its AVIS use on Colorado citizens in general. In fact, Commerce City, Westminster, Colorado Springs, and to a lesser degree, Fort Collins,

are all located within busy commuter corridors. Without the unifying state legislation, a driver—simply by commuting to work on a typical day—could be subjected to a patchwork of rules and procedures by individual cities. Thus, the regulation of automated vehicle identification systems affects the residents of Colorado as a whole, as opposed to simply affecting local residents.

### 3. History and Tradition

We next consider whether the enforcement of traffic violations through the use of automated vehicle identification systems is a matter traditionally governed by state or by local government. The Cities correctly note that we have held that the "regulation of traffic speeds on a city street is a matter of local and municipal concern and, as such, falls within the scope of the home rule amendment." *People v. Hizhniak*, 195 Colo. 427, 429, 579 P.2d 1131, 1132 (1978). Thus, we ruled that a home-rule city may "regulate speed limits on its streets and prescribe its own penalties for violations thereof."[16] *Id.* We based our holding on our analysis that cities "are best able to assess local geography, weather, and road conditions in setting reasonable speed limits on their own streets." *Id.* We have also held that traffic regulations at municipal street intersections are local matters.[17] *City & County of Denver v. Henry*, 95 Colo. 582, 588, 38 P.2d 895, 898 (1934).

However, we have rejected a "categorical approach to the determination of that which is local and municipal and that which is general and state-wide," focusing instead on the "high degree of importance of the facts and circumstances of the particular case" to ascertaining the status of the matter at issue. *City & County of Denver v. Pike*, 140 Colo. 17, 23, 342 P.2d 688, 691 (1959). Indeed, we have ruled that what is of local versus state interest depends on the time, circumstances, technology, and economics. *Graham*, 107 Colo. at 205, 110 P.2d at 257; *see also*, 1

---

16. In *Hizhniak,* the City of Sterling, a home-rule city, argued that the court should uphold its right to impose harsher penalties for traffic speed violations than those imposed by the state based on its constitutional home-rule status. *Hizhniak,* 195 Colo. at 428, 579 P.2d at 1132.

17. The competing statute and ordinance at issue in *Henry* involved the right of way at an intersection. *City and County of Denver v. Henry,* 95 Colo. 582, 584, 38 P.2d 895, 896 (1934).

Chester James Antieau, Municipal Corporation Law § 3.40 at 3–108 (1992) ("The danger[ ] to be avoided [is] ... a temptation to consider something 'state' or 'local' because it was so denominated fifty years ago.").

The matter at issue in this case differs significantly from the traffic control issues we considered in *Hizhniak* and *Henry.* Our holding in *Hizhniak* was based on our reasoning that cities are best able to determine appropriate speed limits based on local conditions such as weather, geography, and road conditions. Without explaining our specific reasoning, we concluded that because the cities have the power to set appropriate speeds, they also have the power to prescribe the penalties for speeding violations. *Hizhniak*, 195 Colo. at 429, 579 P.2d at 1132. Moreover, in *Henry,* we reasoned that regulation of traffic is a matter of local concern because it is "almost wholly dependent upon local conditions." 95 Colo. at 587, 38 P.2d at 897. However, as the trial court correctly noted, "The use of photo radar has little to do with the local weather, geography, and road conditions." (R. at v. III, p. 586.)

The General Assembly's regulation of AVIS does not affect the Cities' legitimate interest in setting the speed limit on city streets, nor does it affect their interest in regulating traffic at local intersections (such as determining whether to install traffic signals and determining right-of-way rules and the like). Rather, the challenged provisions of section 42–4–110.5 and section 42–3–112(14) simply provide basic, uniform guidelines for entities enforcing traffic laws through the use of automated systems.

Thus, although we have held that the regulation of speeding and of traffic at intersections is a purely local matter, we have never addressed the specific question at issue in this case and we have never held that traffic enforcement mechanisms that fundamentally alter Colorado citizens' basic expectations about how they will be cited for infractions are a purely local concern. Therefore, we conclude that while we have traditionally deemed the enforcement of local traffic laws regulating speeding and intersection infractions a matter of local concern, we have never specifically addressed the unique considerations the regulation of AVIS presents.

## 4. The Colorado Constitution

The Cities argue and the trial court agreed that the "right to impose and enforce fines for the violation of municipal ordinances"—a local power under the Colorado Constitution—"includes the right to set and enforce traffic rules on local roads." (R. at v. III, p. 587.) The trial court ruled that this right is implicated by the statutory provisions at issue because the state legislation sets maximum fines, requires warnings in particular circumstances, and prevents cities from accessing state records if they fail to comply with section 42–4–110.5. Thus, the court concluded that these provisions interfere with the Cities' right to regulate the enforcement of speeding violations. The Cities also argue that the state legislature's attempt to dictate the maximum fines for AVIS-detected violations constitutes a direct attack on the authority of cities to conduct their municipal courts under Article XX, Section 6(c). We disagree.

Article XX, Section 6(h) grants to home-rule cities the power to legislate upon, provide, regulate, conduct, and control "the imposition, enforcement and collection of fines and penalties for the violation of any of the provisions of the charter, or of any ordinance adopted in pursuance of the charter." Colo. Const. art. XX, § 6(h).

In addition, Article XX, Section 6(c) grants to home-rule cities the power to control "the creation of municipal courts; the definition and regulation of the jurisdiction, powers and duties thereof, and the election or appointment of the officers thereof." Colo. Const. art. XX, § 6(c).

It is clear that Article XX Section 6(h) provides a constitutional basis for the power of a home-rule city to collect, enforce, and impose fines and penalties for the violation of municipal laws. Moreover, Section 6(c) clearly confers on home-rule cities the power to create municipal courts and to define and regulate their jurisdiction, power, and duties. However, when the subject matter of the local regulation implicates both local and state concern, the constitution can not be

read to dictate the matter at issue as one of exclusively local concern.

■ Thus, while we have determined that it is "significant" that the text of the Colorado Constitution specifically commits a particular matter to state or local regulation, this alone is not dispositive. *Fraternal Order of Police*, 926 P.2d at 588. We have ruled that although our constitution assigns a power to home-rule municipalities in a general way, this does not necessarily mean that the matter is a strictly local issue. *Cf. City & County of Denver v. State*, 788 P.2d at 771 (ruling that section 6(a) of the home-rule amendment—which commits the power to regulate the creation and terms of municipal employment among other things to home-rule cities—does not grant unlimited authority regarding municipal employment to home-rule cities because with respect to aspects of municipal employment that are of statewide concern, state statutes supersede inconsistent municipal provisions). Rather, our analysis has focused on the several factors discussed above. Therefore, while the constitution clearly provides home-rule cities the power to regulate their municipal courts and the power to enforce fines for the violation of local ordinances and charters, when the subject matter of the regulation implicates both state and local concerns, the constitution does not necessarily disallow all state legislation in the area of concern.

### 5. Interest at Stake is a Mixed State and Local Issue

Our analysis shows that both the Cities and the state have important interests at stake. The state's interests include the uniform regulation of automated vehicle identification systems—a method of traffic enforcement so fundamentally different than traditional methods of enforcement that it significantly alters Colorado citizens' basic expectations. In addition, the extraterritorial impact is clear: the two cities that had already implemented automated systems ticketed a high number of non-residents. Moreover, given the practicalities of our commuter culture and our integrated highway system, Colorado drivers may regularly drive through multiple jurisdictions, increasing the impact on Colorado's citizens as a whole.

On the other hand, the Cities have an interest in regulating traffic on their local streets and assuring that those streets are safe for their citizens. The Cities also have an interest in enforcing fines against those who break local traffic laws and in controlling their municipal courts.

On the whole, we cannot conclude that the State's interests are so insignificant that the matter is one of purely local interest. Thus, we hold that the regulation of automated vehicle identification systems to enforce traffic laws is a matter of mixed state and local concern. Therefore, the challenged provisions of section 42–4–110.5 and section 42–3–112(14) do not unconstitutionally infringe on the Cities' home-rule powers under Amendment XX, Section 6 of the Colorado Constitution.

### B. Conflict

■ Because we hold that the regulation of AVIS is a matter of mixed local and state concern, we must determine whether the state statutes conflict with the Cities' local ordinances or charters. The test to determine whether a conflict exists is whether the home-rule city's ordinance scheme authorizes what the state legislation forbids, or forbids what the state legislation authorizes. *Denver & Rio Grande W. R.R. Co. v. City & County of Denver*, 673 P.2d 354, 361 n. 11 (Colo.1983).

■ We find that each of the challenged state statutory provisions conflicts with at least one of the cities' ordinances or charters. First, the ninety-day service requirement in section 42–4–110.5(2)(a)(II) conflicts with Commerce City's one year statute of limitations.[18] Second, Fort Collins and Commerce City permit the issuance of citations detected by automated systems without the required signage dictated by section 42–4–110.5(2)(d)(I).[19] Third, the traf-

---

18. Commerce City Charter, ch. VIII, § 8.1(d)(2).

19. Fort Collins, Colo., Code of the City of Fort Collins, ch. 28, art. II, § 28–17, (§ 4–10) (2001)

fic codes of Fort Collins and Commerce City permit the issuance of a citation for any AVIS-detected speeding violation.[20] This conflicts with the requirement in section 42–4–110.5(4)(a) that cities mail warnings to certain first-time traffic violators detected by AVIS. Fourth, the Fort Collins, Commerce City, and Westminster codes permit fines greater than the maximum fines imposed by section 42–4–110.5(4)(b) and section 42–4–110.5(4.5).[21] Fifth, the Fort Collins code and Westminster charter and code permit these cities to contract with AVIS vendors and to compensate those vendors in a way contrary to section 42–4–110.5(5).[22] Finally, the Commerce City, Fort Collins, and Colorado Springs ordinances, either expressly or implicitly, contemplate that they will have the needed access to state motor vehicle records to determine the identities and addresses of drivers detected by AVIS.[23] This conflicts with the requirement in section 42–3–112(14) that cities comply with the provisions in section 42–4–110.5 or face restrictions on their access to state records. Thus, the state legislation conflicts with the Cities' local ordinances and charters, and the challenged provisions of section 42–4–110.5 and section 42–3–112(14) clearly supersede any conflicting provisions of the Cities' ordinances or charters.

## III. CONCLUSION

In sum, because we find that the regulation of automated vehicle identification systems to enforce traffic laws is a matter of mixed local and state concern, we hold that the challenged provisions of section 42–4–110.5 and section 42–3–112(14) supersede the conflicting provisions of the Cities' local ordi-

nances and charters. Accordingly, we affirm the trial court's judgment.

Chief Justice MULLARKEY dissents.

Chief Justice MULLARKEY, dissenting:

Because I believe that our clear and emphatic holding in *People v. Hizhniak*, 195 Colo. 427, 579 P.2d 1131 (1978), controls this case, I respectfully dissent.

The respondent in *Hizhniak* was charged with speeding on a local street in the City of Sterling, a home-rule city. "Clocked," presumably by radar technology, at thirty-five miles-per-hour in a twenty-five miles-per-hour zone, Hizhniak was tried and convicted, fined $100, and sentenced to ten days in jail. *Id.* at 428, 579 P.2d at 1132. We considered whether Sterling could impose a jail sentence where the legislature had determined that the maximum penalty should be a fine. Concluding that enforcement of traffic laws regulating speeding and red lights is a matter of local interest, we held that the city was permitted to "regulate speed limits on its streets and prescribe its own penalties for violations thereof." *Id.* at 429, 579 P.2d at 1132.

In *Fraternal Order of Police v. City & County of Denver*, we explained that "we rely upon our own precedent to indicate what constitutes a local concern, as opposed to a statewide concern." 926 P.2d 582, 592 (Colo. 1996) (citing *Robertson v. City & County of Denver*, 874 P.2d 325, 350 (Colo.1994) (Erickson, J., dissenting)). To that end, our decision in *Hizhniak* was grounded in our past decisions indicating that regulation of traffic enforcement on local streets of home-rule municipalities is a matter of predominantly local concern. *See, e.g., Retallack v. Police of Colorado Springs*, 142 Colo. 214, 217, 351

[hereinafter Fort Collins Code]; Commerce City, Colo.Code of Ordinances of the City of Commerce City, ch. 11, art. II, § 11–23 (§ 1101(12)) (2001) [hereinafter Commerce City Code].

**20.** Fort Collins Code, ch. 28, art. II, § 28–17 (§ 4–10(c)); Commerce City Code, ch. 11, art. II, § 11–23 (§ 1101(12)(c)).

**21.** Fort Collins Code, ch. 1, § 1–15; Commerce City Code, ch. 11., art. II, § 11–22 (2001); Westminster, Colo., Westminster Municipal Code, § 10–1–4, § 1–8–1 (1998) [hereinafter Westminster Code].

**22.** Westminster Charter § 13.3; Fort Collins Code, ch. 8, art. IV; Westminster Code, title 15, ch. 1.

**23.** Colorado Springs, Colo.Code of the City of Colorado Springs, § 22–17–114 (1980); Fort Collins Code, ch. 28, art. II, § 28–17, (§ 4–10(c)); Commerce City Code ch. 11, art. II, § 11–23, (§ 603(5)(c)); Commerce City Code ch. 11, art. II, § 11–23 (§ 1101(12)(c)).

P.2d 884, 885 (1960) (observing that generally "the individual regulation pertaining to the establishment of one-way streets, posting of stop signs, installation of traffic signals, establishment of varying speed limits, and all regulations governing movements of vehicles ... is the primary function of local government"); *City of Cañon City v. Merris,* 137 Colo. 169, 182, 323 P.2d 614, 621 (1958) ("[Q]uestions of speed, right of way, parking, designation of one-way streets, and similar measures, all regulatory in scope, are matters of local and municipal concern.").

Because *Hizhniak* and the instant case are substantively and functionally indistinguishable, the majority's decision here, in my view, works an implicit but unmistakable repudiation of our precedent in that case. *Hizhniak* centered not on which entity was allowed to set speed limits, but on which had the authority to establish the rule for determining speed limit violations. As in *Hizhniak,* here the State urges that it possesses that authority and thus should decide the standard for speeding violations detected by photo radar. Hence, it argues that the statutorily prescribed limitations on fines, required signage, and prescribed warnings to drivers violating the speed limit by nine miles-per-hour over the limit or less, apply equally to municipalities created by the General Assembly as by the constitution. But here, no less than in *Hizhniak,* we should permit home-rule municipalities to determine how they wish to regulate and enforce the local speed limit. To conclude otherwise, I submit, reads out of the Colorado Constitution Article XX, Sections 6(c) and (h), which provide that home-rule cities shall have the authority to create and regulate municipal courts, and to regulate the imposition, enforcement, and collection of fines for violations of municipal ordinances.

Unlike the majority, then, I believe that the matter at issue in this case is governed by our cases deciding factually and substantively similar traffic control issues. The majority attempts to distinguish *Hizhniak* and *City & County of Denver v. Henry,* 95 Colo. 582, 587, 38 P.2d 895, 897 (1934), by observing that our reasoning there relied on the cities' superior ability to determine speed limits based on local conditions while here "the use of photo radar has little to do with the local weather, geography, and road conditions." Maj. op. at 1283.

The brief of amicus City of Boulder, however, demonstrates that this is a distinction without a difference. Boulder asserts that it "has been particularly interested in using AVIS to slow traffic on residential streets which are, by misfortune of geography and history, heavily traveled. Effective enforcement can obviate the use of structural changes (dead ends, humps and bumps, or traffic circles) which can have unwanted deleterious effects on other municipal goals such as connectivity and emergency response." Thus, a city's use of radar is inherently connected to local conditions. Municipalities choose to mount AVIS systems, just as they choose to locate speed-trapping cruisers, in precisely those locations that, by virtue of weather, geography, road condition, or congestion, pose the greatest threat to local drivers.

In my view, the majority mischaracterizes the municipal power at issue here to avoid the clear import of our precedent. It describes the issue as one centering on the "power to regulate the use of photo radar systems," rather than the power to enforce speeding regulations. This characterization inevitably leads to the conclusion that municipalities have not historically been vested with the power to regulate AVIS technology an irrefutable logical deduction in light of the technology's recent evolution. The effect of this approach is to make a home-rule municipality's powers depend on what type of technology it deploys, not what type of power it is exercising.

Under the majority's rule, the City of Sterling would retain its authority to fine and imprison Mr. Hizhniak provided an officer detected his speed-limit violation using hand-held radar or airplane-assisted technology. Should the city instead elect to install a camera in the back of that officer's vehicle, however, it would be barred from prosecuting a speeding motorist unless it first issued a warning and could, at most, assess a $40 penalty. This approach clearly contravenes *People v. Wade* in which, a decade after

deciding *Hizhniak,* we confirmed that "[a] city's choice of a sentencing scheme different from the state's is well within the city's constitutional power as a home rule city." 757 P.2d 1074, 1076 (Colo.1988). To conclude otherwise, we explained, substantially undercuts home-rule cities' independence and diminishes the degree of "self-determination vested in those cities by the constitution." *Id.* at 1077.

In my view, the extent of a home-rule city's powers cannot be frozen in time and made to depend upon the novelty of the technological tools it uses to enforce its ordinances. Making the innovative quality of a device the linchpin in the local versus statewide concern inquiry renders home-rule authority reliant on factors not enumerated in the constitution and never before contemplated by this court. It also defies our common experience: in the post-World War Two era, radar technology was novel. *See, e.g., State v. Dantonio,* 18 N.J. 570, 115 A.2d 35, 39–40 (1955) (taking judicial notice of devices that measure speed by radar as a method traffic enforcement). The novelty of this technology, and its subsequent enhancements over the decades, have never been sufficient to transform a local concern about traffic regulations into a statewide one. Thus, in my view, the fact that AVIS constitutes a "new" technology is insufficient to strip municipalities of their long-standing ability to regulate and enforce the local speed limit, and it is inadequate to supply the state with a new and higher interest in traffic regulation and enforcement.

I am also unpersuaded by the argument that the State obtains an interest in regulating speed limits enforced by photo radar simply because some drivers might be confused if they receive different types of photo radar tickets in different jurisdictions or if their infraction is not cited on-the-spot. Maj. op. at 1281. As it is now, speeding drivers cope with receiving different types of citations issued variously by troopers patrolling busy state highways and deputies monitoring lonely country roads. Similarly, due to "outside forces," drivers do not always receive parking citations or summonses affixed to their vehicles following an infraction of the local parking code. *Patterson v. Cronin,* 650 P.2d 531, 535 (Colo.1982). Nevertheless, this court has been untroubled by the fact that these violaters later receive notice via mail, perhaps days after they can remember committing the infraction. *Id.* In my view, there is no legally significant difference between receiving a post-infraction parking ticket or speed-limit violation citation by mail.

In sum, our case law establishes that the regulation and enforcement of traffic on local roads is a local concern. Absent a compelling reason to depart from our precedent, particularly a case so directly on point, I must adhere to the principle that traffic regulation is a local concern, as established in *Hizhniak.* Accordingly, I would conclude the provisions of the municipal regulations supersede the conflicting provisions of the photo radar statute. Therefore, I would reverse.